MATTER OF CONLIFFE

In Deportation Proceedings

A-13419457

*Decided by Board December 3, 1968*

(1) Evidence obtained during the preliminary investigation in the form of affidavits and question-and-answer statements are admissible in evidence in deportation proceedings to establish respondent was not the legal spouse of a U.S. citizen at entry and, hence, is deportable under section 241(a)(1) of the Immigration and Nationality Act, as one not nonquota as specified in his visa and whose visa was procured by fraud or misrepresentation.

(2) There was no denial of due process where the Service refused to grant assurances for respondent's reentry to the United States to go abroad to personally confront Government witnesses and counsel for respondent refused to cross-examine Government witnesses through inquiries and interrogatories by mail.

CHARGES:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at entry, to wit: not nonquota immigrant as specified in visa.

Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at entry, to wit: visa procured by fraud or willful misrepresentation.

ON BEHALF OF RESPONDENT:
James J. Orlow, Esquire
824 Bankers Securities Bldg.
Philadelphia, Pa. 19107

ON BEHALF OF SERVICE:
R. A. Vielhaber
Appellate Trial Attorney

The respondent, a native and citizen of St. Vincent Isle in the West Indies and a subject of Great Britain, appeals from an order entered by the special inquiry officer on April 18, 1968 directing his deportation to St. Vincent Isle on the charges stated in the order to show cause. Counsel on appeal excepts to the finding of deportability on the ground that the respondent has been denied due process in the conduct of the proceedings by the spe-

cial inquiry officer. He requests a remand of the case for further hearing.

The respondent, a married male alien, 42 years of age, concedes that he is a citizen of St. Vincent Isle and a subject of Great Britain, that he last entered the United States on or about November 1, 1964, and that he was admitted at that time as a nonquota immigrant upon presentation of a nonquota immigration visa issued to him as the husband of Ophelia Conliffe, formerly Ophelia Glass, a citizen of the United States. The respondent does not admit that at the time he obtained his immigration visa and his entry into the United States he was then and still is the husband of Doris Conliffe, nee Noel, an alien, to whom he was married on June 1, 1952, and that in obtaining his immigration visa he willfully and falsely claimed to be the husband of Ophelia Conliffe and willfully and falsely claimed that he had never been married before his marriage to Ophelia Conliffe on January 6, 1964. During the proceeding the respondent stood mute and put the Government on proof as to the charges contained in the order to show cause.

The evidence introduced by the Government is entirely documentary. The documentary evidence relied upon by the special inquiry officer has been fully discussed in his opinion. Briefly, it consists of an immigration form (I-94B) which shows that the respondent, born in Trinidad, West Indies on July 17, 1927, was admitted to the United States as a temporary agricultural worker on November 21, 1958. This document was stipulated in evidence, and there is a photograph attached to the reverse side.

The Service also introduced the following documents in evidence: Exhibit 3 is an identity card issued by the government of Trinidad and Tobago to Eli Conliffe born in Trinidad, West Indies, on July 17, 1927 and signed by the bearer, Eli Conliffe. The identity card has attached thereto the same photograph found on the reverse side of Exhibit 2 and bears the same number "T-589531" found on Exhibit 2 and on both photographs. Counsel refused to identify this document as relating to the respondent notwithstanding the fact that it has an identical photograph and the same identity number as found on Exhibit 2 (p. 4).

Attached to Exhibit 6 are two documents relating to one "Eli Conliffe" and bearing his signature. The first attachment is an agricultural worker information sheet relating to Eli Conliffe in which he names "Doris Conliffe" as his nearest relative, identifying her as his wife. The second attachment is directed to the Labor Commissioner at Kingstown, St. Vincent Island, West In-

dies, dated April 20, 1959, signed by Eli Conliffe and directs the Labor Commissioner to pay $10 a month to his wife, Mrs. Doris Conliffe. Counsel objected to the introduction of the attachments on the ground that they have not been validated or identified except by the trial attorney, and he also expressed a desire to cross-examine the signatories of the attached documents (p. 9).

Exhibit 9 is the immigrant visa presented by the respondent when he was admitted to the United States on November 1, 1964. The application for the visa bears the signature of "Eli Conliffe" which appears to be similar to the signatures found in the prior exhibits. The special inquiry officer observed that the photograph on the visa is a good likeness of the respondent and closely resembles the picture attached to Exhibit 2 which counsel stipulated in evidence without objection.

Attached to the visa is an application executed by one Eli Conliffe on October 27, 1964. It states among other things that the applicant was born on July 17, 1926, in Belair, St. Vincent; that his present occupation is a carpenter; that he is "going to the United States" to join his wife who is named as "Ophelia Conliffe," residing at 5813 Larchwood Street in Philadelphia, Pennsylvania and that her maiden name was "Glass." The application names as the applicant's next of kin Clementina Conliffe, his mother, and states that his father, James Conliffe, died on June 1, 1958. The application further states that the applicant's claim for nonquota classification is based on the fact that he is "the husband of a United States citizen and the beneficiary of a petition filed July 6, 1964 and approved July 22, 1964 at Philadelphia." The application for a visa is supported by a birth certificate issued by the Registrar of General Births and Deaths of the Colony of St. Vincent showing the birth of Eli Sylvena Conliffe at Belair, St. Vincent Island, on July 17, 1926, the son of James and Clementiana Conliffe whose maiden name was Soso.

Exhibit 12 is a sworn statement executed by Clementina Conliffe before a Justice of the Peace of the Island of St. Vincent, West Indies, on August 16, 1966. The affiant states in substance that she is the mother of Eli Conliffe born on July 17, 1926, and that she is "certain that my son Eli got married to Doris Noel" and that she "heard that (her) daughter-in-law, Doris Conliffe nee Noel, is in Trinidad but I do not know her address."

Exhibit 13 is a question-and-answer statement taken from one Priscilla Conliffe by the American Consul at Bridgetown, Barbados on August 9, 1966. The affiant, Priscilla Conliffe, stated that she is the sister-in-law of Eli Conliffe whose photograph she iden-

tified. She further stated that she witnessed the marriage of Eli Conliffe to Doris Noel in 1952; that Eli Conliffe is the son of Clementina Conliffe, and he is the father of five children, three girls and two boys, and to the best of her knowledge her brother-in-law has never been divorced.

Exhibit 14 is a certified true copy of a marriage certificate issued to Eli Conliffe and Doris Noel showing their marriage on June 1, 1952; that the groom is a carpenter and the bride a seamstress; that the groom was 26 years of age and the bride 24 years of age; that both the bride and groom were born in St. John Parish at Belair, and that the father of the groom was James Conliffe and the father of the bride Robert Noel. The certificate is duly signed by Eli Conliffe and Doris Noel in the presence of William Wyllie and Priscilla Conliffe. According to the certificate, the marriage was celebrated at the Cathedral Church in St. George. It is noted that the age of the respondent on the marriage certificate is consistent with the age indicated on the birth certificate attached to the visa. Furthermore, he gave as his occupation that of a carpenter when he applied for his visa, and the occupation of carpenter is also shown on the marriage certificate.

Exhibit 15 is a question-and-answer statement executed by Doris Conliffe and forwarded to the Embassy of the United States of America at Bridgetown, Barbados, West Indies, on May 18, 1967, by the Chief of Police of the Royal St. Vincent Police Force at Kingstown. The maker of the statement identifies a copy of the photograph of the respondent which was attached to his visa as a photograph of the person that she married on the first of June 1952 in the Kingstown Anglican Church. The maker of the statement also stated that she was the mother of five children born between March 7, 1950, and March 14, 1958; that she resided with her husband from 1950 until January 10, 1958, at Fountain, St. Vincent Island; nd that her husband has "four artificial teeth to the front of the top row." The statement is not under oath.

During the presentation of the Government's case counsel for the respondent was assured that he would be afforded an opportunity to cross-examine by interrogatories the makers of the documents introduced by the Government as evidence in support of the charges against the respondent. Counsel was advised by the special inquiry officer that he would be given one month in which to determine whether he wished to cross-examine the witnesses by way of written interrogatories or whether he would travel to St. Vincent Island for a confrontation (p. 21). Counsel by letter

dated November 28, 1967, informed the District Director at Philadelphia, Pennsylvania, that it would be necessary for the respondent to accompany him to St. Vincent to prepare a defense since he (counsel) is "not only an outsider and alien to the population, but also visibly different"; that he (counsel) does not propose to submit the respondent to an exclusion proceeding in lieu of a deportation proceeding; and that he (counsel) requests an "assurance" on the part of the District Director that the respondent would not be made the subject of exclusion proceedings "because of the facts underlying the present pending deportation proceedings" (Ex. 16).

The District Director in his reply conceded that "the Government should give him (respondent) all possible access to the evidence which he (respondent) must obtain and present on his own behalf in the deportation proceeding now pending" but that he (District Director) could "see no way out of what appears to be an impasse in view of (counsel's) insistence that inquiries, interrogatories and investigation through the use of mail would be ineffective in the circumstances of this case" (Ex. 17). The District Director informed counsel that he could give no assurance that respondent would not be subject to exclusion proceedings, "for the law is clear and I have no discretion or authority to impugn it in any manner" (Ex. 17).

Counsel in a letter to the special inquiry officer dated January 26, 1968, stated that under the Government's theory of the case the denial of an assurance that the respondent would not be subjected to exclusion proceedings amounted to a denial of a presentation of cross-examination as well as the respondent's defense. He stated that if the respondent were "free to prepare his case" he could prove that:

(1) The key witness, Doris Noel, sometimes also known as Doris Conliffe, is unworthy of belief.

(2) This same Doris Noel was not lawfully able to contract a valid marriage with respondent as alleged, notwithstanding what appears to be the creation of such a status.

(3) The other witnesses in favor of (the) Government's theory are mistaken as to the legal conclusions which they draw from certain facts.

Counsel declined to proceed further until the respondent has been given a fair opportunity to investigate and prepare a cross-examination and his defense (Ex. 18).

The special inquiry officer concludes on the basis of the documentary evidence submitted by the Government that "deportabil-

ity has been established by even a greater degree of evidence than that which is clear, convincing and unequivocal" (p. 11, special inquiry officer's opinion). Counsel on the other hand urges error in that the respondent has been denied due process of law, since the Government has effectively prevented respondent from preparing his defense by refusing to assure him that he would not be held in exclusion proceedings upon his return to the United States. A similar argument was made in the case of *Hyun* v. *Landon*, 219 F.2d 404 (9th Cir. 1955). The court held that deportation proceedings are civil in nature, and the fact that an alien is unable to travel to a place where he could cross-examine the witnesses is not a denial of the right of cross-examination (*ibid*, at page 406).

Counsel argues that the special inquiry officer has accepted certain documents as evidence supporting the charges which on their face are affidavits and not depositions, and do not conform to the rule on depositions. This fact, it is urged, denies the respondent his statutory rights under section 242(b) of the Act in the sense that if the affidavits are to be considered as depositions they are proceedings of which the respondent never had notice or opportunity to participate in the cross-examination of the makers of the oral depositions.

The documents referred to by counsel are statements in both affidavit and question-and-answer form which were taken from the respondent's mother, his sister-in-law, his first wife and a person who witnessed the respondent's first marriage. This evidence was secured during the preliminary investigation of the case pursuant to the authority contained in section 287(b) of the Act (8 U.S.C. 1357). It was admitted in evidence over objections by counsel pursuant to authority given the special inquiry officer in section 242(b) of the Act. Contrary to the argument of counsel, section 242(b)(1) of the Act does not require the Service to reveal the nature of the evidence it proposes to introduce during the hearing. It provides that "the alien shall be given notice, reasonable under all circumstances, of the nature of the charges against him and the time and place at which the proceedings will be held." The order to show cause served upon the respondent on November 6, 1967, fully satisfies this requirement of the statute.

There is no merit to counsel's claim that the introduction of the affidavits and question-and-answer statements violates section 242(b)(2) in the sense that if this evidence is regarded as depostitions, the respondent was not represented by counsel. Section 242(b)(2) makes no provision for an alien's representation by

100

counsel during the preliminary investigation prior to the issue of an order to show cause. Furthermore, there is no validity to counsel's allegation that the evidence obtained by the Service prior to the issue of the order to show cause violates section 242(b)(3) which requires that an alien be permitted "a reasonable opportunity to examine the evidence against him, to present evidence in his own behalf and to cross-examine witnesses presented by the Government." There is ample evidence in the record that the respondent was given an opportunity to examine the evidence against him and to prepare his defense in accordance with the regulation providing for interrogatories (8 CFR 242.14(e)).

Concerning the issue of discretionary relief counsel maintains that to proceed with an application would necessarily waive the Government's errors of proof. There is no substance to this claim because 8 CFR 242.17(d) specifically provides that an application for discretionary relief "shall not be held to constitute a concession of alienage or deportability in any case in which the respondent does not admit his alienage or deportability."

We are here concerned with an adminsistrative proceeding which is not bound by the strict rules of evidence applicable to judicial proceedings. *Schoeps v. Carmichael*, 177 F.2d 391 (9th Cir., 1949). The respondent was afforded ample opportunity to prepare his defense and cannot now complain of his failure to take advantage of the offer permitting him to proceed with the taking of depositions and the cross-examination of the Government witnesses. There is no requirement in the statute or the regulations that an alien be confronted by witnesses when taking a deposition or cross-examining a witness. Cf. *Singh v. McGrath*, 104 F.2d 122, 123 (9th Cir., 1939); *matter of McNeil*, 11 I. & N. Dec. 378 (A.G. 1965).

The evidence in the instant case is clear, convincing and unequivocal that the respondent married Doris Noel at the Cathedral Church of St. George on St. Vincent Isle on June 1, 1952. There is no evidence before us that the respondent was free to marry Ophelia Glass, a citizen of the United States, at Elkton, Maryland, on January 6, 1964. The Government established a *prima facie* case of deportability and the burden was upon the alien to go forward with the evidence to establish that his first marriage was a nullity. Cf. *Ah Chiu Pang v. Immigration and Naturalization Service*, 368 F.2d 637 (3d Cir., 1966), cert. den. 386 U.S. 1037, 18 L.ed. 601 (1967). This he refused to do unless concessions were made which were not permissible under the immigration laws. Under the circumstances, he has not been denied due

process of law. We affirm the decision of the special inquiry officer and conclude that there is clear, convincing and unequivocal evidence that the respondent is deportable as charged in the order to show cause. An appropriate order will be entered dismissing the appeal and denying a remand of the proceeding to the special inquiry officer.

**ORDER:** It is directed that the appeal be and the same is hereby dismissed and the request for a remand of the proceeding to the special inquiry officer is hereby denied.