MATTER OF PAYAN

In Deportation Proceedings

A-12618819

*Decided by Board March 3, 1972*

(1) An *ex parte* statement of a Government witness is not, for lack of cross-examination, precluded from meeting the test of clear, convincing and unequivocal evidence as enunciated in *Woodby v. I. & N. S.*, 385 U.S. 276 (1966), where full opportunity to take depositions was afforded but declined.

(2) Where evidence contained in the record of her conviction of conspiring to aid and assist aliens, coupled with evidence developed during the deportation hearing (indicating the ongoing conspiracy), establishes that the brief absence in Mexico on April 26, 1966, of respondent, a permanent resident alien, was for a purpose in contravention of the immigration laws, such departure does not come within the ambit of *Rosenberg v. Fleuti*, 374 U.S. 499 (1963), and upon return to the United States she made an "entry" on which to predicate deportability under section 241(a)(13) of the Immigration and Nationality Act.

CHARGES:

Order: Act of 1952—Section 241(a)(13) [8 U.S.C. 1251(a)(13)]—Prior to entry assisted alien to enter the United States illegally.

Section 241(a)(13) [8 U.S.C. 1251(a)(13)]—Within five ears of entry assisted alien to enter the United States illegally.

ON BEHALF OF RESPONDENT:
Jack Wasserman, Esquire
Warner Building
Washington, D. C. 20004
(Brief filed)

Counsel of Record:
Manuel Lopez, Esquire
1725 West Beverly Boulevard
Los Angeles, California 90026

ON BEHALF OF SERVICE:
Irving A. Appleman
Appellate Trial Attorney
(Brief filed)

The respondent, a married female alien, 49 years of age, a native and citizen of Mexico, has been found deportable under section 241(a)(13) in that prior to her entry and within five years after entry, she knowingly and for gain, encouraged, induced, assisted, abetted, or aided two other aliens to enter or to try to enter the United States in violation of law. She appeals from an order entered by the special

inquiry officer directing her deportation to Mexico on the charges stated in the order to show cause. Exceptions have been taken to the finding of deportability.

The respondent was admitted to the United States for permanent residence at the port of San Ysidro, California on July 8, 1961. She was readmitted as a returning resident alien at the same port on or about April 26, 1966. The respondent admits allegations 1 through 5 which are concerned with alienage, her nationality and her entries in 1961 and 1966. She denies allegations 6 through 18 which are concerned with the charges that during December of 1965 and February of 1966, she "knowingly and for gain, encouraged, induced, assisted, abetted, or aided" two Mexican aliens to enter or try to enter the United States in violation of law.

The respondent was convicted in the United States District Court for the Southern District of California on June 3, 1968 "upon a finding of guilty" of the offense of conspiring to "defraud the United States of and concerning its governmental function and right of administering the Immigration Law," 18 U.S.C. 371, in that she did "wilfully, knowingly and unlawfully obtain an immigrant visa" for unindicted co-conspirators Benjamin Naranjo-Perez and Jesus Gomez-Ramirez" by means of false, fraudulent and misleading misrepresentations" in violation of 18 U.S.C. 1546.

Count 5 of the indictment relates to unindicted co-conspirator Benjamin Naranjo-Perez, a Mexican national mentioned in allegations 13 through 18 of the Order to Show Cause. Count 6 of the indictment relates to unindicted co-conspirator Jesus Gomez-Ramirez, a Mexican national mentioned in allegations 6 through 12 of the order to show cause. The objects of the conspiracy and the overt acts alleged to effect the conspiracy charge the respondent with arranging sham marriages between the subject aliens and citizens of the United States for a substantial fee and for the sole purpose of obtaining for the aliens an immigrant visa for entry into the United States to join their alleged citizen spouses. Among the overt acts alleged in both counts 5 and 6 are the payment of money to the respondent by the aliens and the delivery of spurious documents for presentation by the aliens to the United States consul.

The evidence of record has been fully discussed in the opinion of the special inquiry officer. The Government presented as witnesses an investigator of the Immigration and Naturalization Service who prepared the exhaustive report entered as Exhibit 7 and Jesus Gomez-Ramirez, a Mexican national and the unindicted co-conspirator referred to in count 6 of the indictment entered as Exhibit 4. The investigator testified that he was present during the trial of the respondent in the United States District Court and

59

at the pretrial interrogation of the co-conspirators Benjamin Naranjo-Perez and Jesus Gomez-Ramirez by the Assistant United States Attorney. He stated that the testimony of both conspirators was substantially the same as their sworn statements entered as Exhibits 5 and 6 in the record (pp. 23 and 24).

The investigator further testified that he took the sworn statement from the respondent which is attached to Exhibit 7 as part B, and dated October 17, 1966. The respondent in her statement testified that she had never "assisted citizens of Mexico in obtaining visas"; that she does not know whether the alien Benjamin Naranjo-Perez obtained or is attempting to obtain a visa to enter the United States; that she knows Benjamin Naranjo-Perez because "I have loaned him money in Mexico"; and that the last time she was in Mexico, April 26, 1966, she remained in Tijuana "about two or three hours" (Ex. 7, part B, pp. 9-10 and 12).

A summary of the testimony of the witness Jesus Gomez-Ramirez at the hearing and in his statement is as follows: He first met the respondent in Tijuana, Mexico through a taxi cab driver who told him about a lady who could arrange immigration documents for entry into the United States. The cab driver took him to the respondent who agreed to obtain the required documents for the sum of $450 and he paid her $40 with the understanding that additional money would be paid when she delivered the required documents. Thereafter, the respondent delivered to him a birth certificate for one Ysaura O. Perez, born in Watts, California on August 9, 1935, a marriage certificate from the State of Guanajuato showing his marriage to Ysauro Perez-Orasco in Penjamo, Mexico on February 4, 1965, an affidavit of support allegedly signed by Ysauro Perez and an offer of employment in the United States.

An immigrant visa based on the spurious documents was issued to the witness by the consul at Hermosilla, Mexico on October 18, 1966. When the witness presented the visa for entry at San Luis, Arizona on October 21, 1966, he was told by the immigration officer that it would be necessary for his citizen wife to appear with him. Unable to present his citizen wife, the witness called the respondent on two occasions and was finally told not to call anymore (pp. 76, 78 and 84). He then returned to the border and told the immigration officer that he could not present his citizen wife because he "did not know her" (p. 81). He also informed the immigration officer that he had paid the respondent to obtain the required documents for his immigrant visa (p. 86). The witness Jesus Gomez-Ramirez identified the respondent as the woman he saw in Tijuana, Mexico when he was "brought" to the house by the taxi driver (p. 96) and to whom he paid some $350 for the

spurious documents he used to obtain the immigrant visa he presented when he applied for admission on October 21, 1966. He further testified that the affidavit signed by him on January 20, 1967 and a record of a sworn statement made by him on November 16, 1966 are true and correct (pp. 30–31 and Ex. 6).

Section 241(a)(13) of the Immigration and Nationality Act makes deportable any alien who:

> prior to, or at the time of any entry, or at any time within five years after any entry, shall have, knowingly and for gain, encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law.

The fact that the respondent was convicted of conspiring to defraud the United States of its right to administer the immigration laws by committing the offense defined by 18 U.S.C. 1546 merely establishes that she did "encourage and assist" the aliens Bejamin Naranjo–Perez and Jesus Gomez–Ramirez to obtain immigrant visas by furnishing them with spurious immigration documents. Her conviction does not establish that she assisted these aliens "for gain," an essential element of section 241(a)(13) of the Act.

The special inquiry officer finds that the evidence of record establishes the respondent's deportability on both of the charges contained in the order to show cause and that such evidence is clear, convincing and unequivocal (p. 11, special inquiry officer's opinion).

The special inquiry officer also finds the testimony of the respondent to be unworthy of belief (p. 10, special inquiry officer's opinion). The special inquiry officer states in his opinion that the respondent's conviction in the United States District Court of California on June 3, 1968 for conspiring with others to commit offenses against the United States in violation of 18 U.S.C. 371 "establishes all of [the] elements required for deportability under section 241(a)(13) of the Immigration and Nationality Act, in that it establishes that the respondent knowingly and for gain encouraged, induced, assisted, abetted, or aided an alien to enter or to try to enter the United States in violation of law" (p. 5, special inquiry officer's opinion).

Counsel contends that a conviction under 18 U.S.C. 371 for conspiring with others to fraudulently obtain documents required for entry into the United States (18 U.S.C. 1546) does not require proof that the respondent knowingly received money for her activity in the conspiracy. We agree with counsel that the respondent's conviction for conspiring to violate the substantive offense defined by 18 U.S.C. 1546, in and of itself, does not establish that the unlawful activity on the part of the respondent as recited in

the indictment was entered into "for gain." We find, however, that the special inquiry officer's statement quoted above does not amount to prejudicial error because in addition to the allegations set forth in counts 5 and 6 of the indictment, there is supporting evidence in the record that the respondent did obtain the monetary considerations referred to in both counts in return for knowingly encouraging, inducing, assisting, abetting, or aiding the alien Jesus Gomez–Ramirez to "try to enter" the United States (count 6) and the alien Benjamin Naranjo–Perez to enter the United States (count 5) in violation of the immigration laws.

We fail to see any validity in counsel's argument that the order to show cause is defective because the factual allegations fail to properly notify the respondent of the exact charges she had to meet. He argues that there is a "material deviation" between the factual allegations of the order to show cause and the conclusions of law as to deportability because factual allegations 11 and 17 states that the two aliens *"applied for admission"* to the United States "on the basis of the documents provided [by respondent] and the immigrant visa[s] fraudulently obtained" by them whereas the basis for both grounds of deportability under section 241(a)(13) of the Act is that the respondent "encouraged, induced, assisted, abetted or aided" the two aliens *"to enter or to try to enter the United States in violation of law."* (Emphasis supplied.) Counsel suggests that the case be remanded for an amendment of the order to show cause.

The order to show cause fully complies with 8 CFR 242.1 in that, *inter alia*, it informs the respondent "of the acts or conduct alleged to be in violation of the law," including "the statutory provisions alleged to have been violated." The order to show cause merely enables the Immigration Service to obtain direct jurisdiction over the person of the alien. It sets in motion an inquiry which may follow broad lines, possibly eliminating the presently alleged grounds for deportation and substituting others, *Hoh Yeh Sze* v. *INS*, 389 F.2d 978, 981 (C.A. 2, 1968); *Haymes* v. *Landon*, 115 F. Supp. 506, 508 (S.D. Cal., 1953). We note that items 6 and 13 of the order to show cause allege in substance that the respondent made an agreement with both aliens that she "would aid and assist [them] *to enter the United States"* in violation of law for a monetary consideration. (Emphasis supplied.) A remand of the case is not warranted for the purpose asserted by counsel.

We will next consider counsel's argument that on this record neither of the charges can be sustained. His argument with regard to both charges is based on the premise that under the Supreme Court's decision in *Rosenberg* v. *Fleuti*, 374 U.S. 449 (1963)[1], the respondent made no "entry" when she returned to the United

States following a brief trip to Mexico of several hours on April 26, 1966. Regarding the first charge (prior to entry) which relates to the alien Benjamin Naranjo–Perez, who entered the United States on February 16, 1966, counsel maintains that this charge cannot be sustained because (1) there was no subsequent entry of the respondent on April 26, 1966 for the reason that there is no clear and convincing evidence that she made a "meaningful departure" within the ambit of *Fleuti, supra* footnote 1, and (2) the *ex parte* statement (Ex. 5) of the alien Benjamin Naranjo–Perez without cross-examination does not amount to clear, convincing and unequivocal evidence of deportability as required by *Woody* v. *INS,* 385 U.S. 276 (1966).

Counsel's claim that the respondent under *Fleuti* made no "entry" on April 26, 1966 within the meaning of section 101(a)(13) of the Act, 8 U.S.C. 1101(a)(13), will be considered in our discussion of the second charge contained in the order to show cause, to wit, that within five years after entry the respondent assisted the alien Jesus Gomez–Ramirez to "try to enter" the United States. However, we will at this time dispose of counsel's argument that the *ex parte* statement of the alien Benjamin Naranjo–Perez without cross-examination does not amount to clear, convincing and unequivocal evidence of deportability as required by *Woodby* v. *INS, supra.*

This argument is based on the premise that the respondent's representative was not afforded an opportunity to take depositions from the alien Benjamin Naranjo–Perez as provided by 8 CFR 242.14(e). The alien Benjamin Naranjo–Perez resided more than 100 miles from Los Angeles, California, the situs of the hearing. Counsel reasons that since the alien Benjamin Naranjo–Perez was not subjected to cross-examination, the evidence contained in his sworn statement (Ex. 5) does not comply with the clear, convincing and unequivocal rule enunciated in *Woodby, supra.*

We find no merit to counsel's argument. A review of the record establishes that the respondent's representative was afforded an opportunity to take depositions from the alien Benjamin Naranjo–Perez (pp. 12–15, and 16). When questioned by the special inquiry

---

[1] The Supreme Court in the case of *Rosenberg* v. *Fleuti* had before it the issue of whether the return of a resident alien to the United States following a brief casual trip across the border amounted to an "entry" as that term is defined in section 101(a)(13) of the Immigration and Nationality Act. The Court stated in its opinion that one of the criteria to be used in reaching a conclusion as to whether the alien had made a "meaningful departure" within the meaning of the statute was a determination as to whether the departure was for the purpose of accomplishing some object which is itself contrary to some purpose reflected in our immigration laws.

officer during the hearing of January 16, 1969, she replied "I intend to do that" (p. 16). At page 26 of the record, the respondent's representative agreed after an off-the-record discussion that she would delay her decision as to whether she desired to have the testimony of Benjamin Naranjo–Perez taken by deposition until after the testimony of Jesus Gomez–Ramirez.

The question of the production of the witness Benjamin Naranjo–Perez was again raised at the hearing of March 6, 1969 (p. 96). The respondent's representative again expressed a desire to interrogate the witness and informed the special inquiry officer that since she would in the near future be in Northern California (Santa Cruz), she would prefer to interrogate this witness personally (pp. 98, 99). When it developed that the interrogation would be scheduled for an immigration office nearest the residence of the witness, the respondent's representative decided "to dispense with the written deposition" and waived the cross-examination of the witness Benjamin Naranjo–Perez (p. 99).

The record establishes, contrary to counsel's claim, that the respondent's representative was afforded an opportunity to take written depositions from the witness Benjamin Naranjo–Perez. The remaining question concerns whether his *ex parte* statement amounts to clear, convincing and unequivocal evidence of deportability as required by *Woodby*. 8CFR 242.14(c) provides in part that the special inquiry officer "may receive in evidence any ... written statement which is material and relevant to any issue in the case previously made by ... any other person during any investigation, examination, hearing, or trial." The courts have long sanctioned this practice in immigration proceedings, *Navarrette-Navarrette* v. *Landon*, 223 F.2d 234, 237 (C.A. 9, 1955), cert. denied 351 U.S. 911; *Glaros* v. *INS*, 416 F.2d 441, 443 (C.A. 5, 1969). Cf. *Castillo-Lopez* v. *INS*, 437 F.2d 74, 75 (C.A. 5, 1971). We find nothing in *Woodby* which precludes the use of an *ex parte* statement under the circumstances presented by this case to establish that "the facts alleged as grounds for deportation are true," *Woodby* v. *INS*, 385 U.S. 276, 286 (1966).

The second charge in the order to show cause relates to the assistance rendered by the respondent to the alien Jesus Gomez–Ramirez which enabled him to obtain an immigrant visa which he presented when he applied for admission to the United States on October 21, 1966. Counsel contends that since his application for entry was more than five years after the respondent's original entry on July 8, 1961, the charge that "within five years after entry" the respondent assisted this alien "to try to enter the United States" cannot be sustained as there was no "entry" of the respondent on April 26, 1966. Counsel also argues that the respond-

ent did not aid or assist the alien Jesus Gomez-Ramirez to "try to enter" the United States until he actually applied for admission on October 21, 1966 and for this reason, the deportable offense charged was not committed within five years of the repondent's entry on July 8, 1961.

The Service maintains that it is clear from the language of section 241(a)(13) that where the illegal encouragement, inducement or assistance of an alien for gain is manifested by overt acts which occur within five years of the entry of the respondent, then the five-year provision of the statute has been satisfied. The Service claims that there is no requirement in the statute that the "encouraged" or "induced" alien actually "enter" or "try to enter" the United States within this five-year period.

We have carefully considered the arguments and briefs submitted by counsel for the respondent and the appellate trial attorney. The special inquiry officer's finding that both charges are sustained turns on the theory that the respondent made an "entry" when she returned to the United States from Mexico on April 26, 1966. He states in his opinion that the respondent's return to the United State does not come "within the purview" of the Supreme Court's decision in *Rosenberg* v. *Fleuti, supra* footnote 1, because "as indicated in the record of conviction, Exhibit No. 4," the illegal activities of the respondent commenced in April 1965 and continued up to the date of the indictment, i.e., September of 1967. The special inquiry officer further states in his opinion at page 7:

> ... the evidence contained in the record [of conviction] is sufficient to etablish that at the time of the respondent's trip to Mexico on April 26, 1966 she was still involved in those [illegal] activities.

We do not agree with the special inquiry officer that the evidence contained in the record of conviction, entered as Exhibit 4, is sufficient to establish that the respondent's departure on April 26, 1966 was for the purpose of engaging in an illegal activity in violation of the immigration laws. However, this evidence, when coupled with the evidence developed during the hearing, establishes to our satifaction that the respondent's departure on that date was for an illegal purpose.

The additional evidence in the record which supports our conclusion that the respondent made a "meaningful departure" may be summarized as follows. The alien Jesus Gomez-Ramirez testified during the hearing that the record of the sworn statement made by him on November 16, 1966 and entered as Exhibit 6 is true and correct (p. 31). He stated under oath on this occasion (p. 5 of statement attached to Ex. 6):

> ... About two months later (referring to February 1966), *some time in April of 1966*, I again returned to [respondent's] house in Tijuana, and she gave me a

marriage certificate from the State of Guanajuato, Mexico, that said that I married YSAURO PEREZ-OROSCO in Penjamo [Guanajuato] on February 14, 1965. I well knew that this was a fraudulent document. (Emphasis supplied.)

The witness Jesus Gomez-Ramirez further stated that following his first meeting with the respondent in February of 1966, she mailed him a birth certificate "for one YSAURO O. PEREZ and it showed that she was born in Watts, California, on August 9, 1935."

Attached to Exhibit 7 are copies of several notebooks which were in the possession of the respondent when she applied for admission at the port of San Ysidro, California on April 26, 1966. One of these notebooks contains the name of the witness Jesus Gomez-Ramirez and written directly under his name is the name of Ysauro O. Perez "nacio en Los Angeles, California, Agosto 9, 1935."

A conspiracy which contemplates, as this one does, a continuity of purpose and a continued performance of acts, is presumed to continue until there has been an affirmative showing that it has terminated, *United States* v. *Etheridge*, 424 F.2d 951, 964 (C.A. 6, 1970) and cases cited. The possession of a notebook at the time of the respondent's application for admission, which notebook contains the name of an assisted alien, the name of his immigration wife and her place and date of birth, when coupled with the testimony of the assisted alien that the respondent "some time in April of 1966" had given him supporting immigration documents in Mexico based on the same information recorded in that notebook, does not amount to an afirmative showing that the conspiracy had terminated prior to the respondent's application for admission on April 26, 1966. Under the circumstances, we have no difficulty in reaching a determination on this record that the respondent's departure on the occasion in question was for the purpose of accomplishing some object which is itself contrary to some policy reflected in our immigration laws. The nexus between the credible evidence of record and the overt acts set forth in the record of the respondent's conviction could lead to no other conclusion. We affirm the special inquiry officer's conclusion that the respondent made an entry on April 26, 1966.

We conclude that there is clear, convincing and unequivocal evidence that the facts alleged as grounds for deportation are true. The record of the respondent's conviction establishes that she did "encourage and assist" the aliens Benjamin Naranjo-Perez and Jesus Gomez-Ramirez "to enter or try to enter" the United States by furnishing them spurious documents with which they obtained immigrant visas. The *ex parte* statement of Benjamin Naranjo-Perez and the testimony of Jesus Gomez-Ramirez is credible evidence that she engaged in this activity "knowingly and for

gain." There is affirmative evidence that the unlawful activity of the respondent in encouraging and assisting the alien Benjamin Naranjo-Perez to enter the United States took place "prior to" the respondent's "entry" on April 26, 1966. There is also affirmative evidence that the unlawful activity of the respondent in encouraging and assisting the alien Jesus Gomez-Ramirez to "try to enter" the United States was accomplished "within five years after [the] entry" of the respondent on April 26, 1966. All of the elements of section 241(a)(13) have been established by credible evidence. We find the respondent deportable as charged.

ORDER: It is directed that the appeal be and the same is hereby dismissed.

67