## MATTER OF PONCO

### In Deportation Proceedings

### A-19359463

*Decided by Board October 24, 1974*

(1) In deportation proceedings the Service bears the burden of proving alienage, however one who admits birth in a foreign country is presumed an alien and must go forward with the evidence to establish his claim to United States citizenship. Evidence concerning the validity of the alien's nonimmigrant visa, including a letter from the American Counsul in Manila which stated that the nonimmigrant visa number on respondent's visa had been issued to another person was admissible, even though hearsay, where it was relevant to the issue of respondent's deportability under section 241(a)(1) of the Immigration and Nationality Act.

(2) Pursuant to 8 CFR 242.8(b), unless a formal deportation hearing is actually begun, and evidence presented for the record, there is no bar to the substitution of immigration judges.

CHARGE:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251 (a)(1)]—Excludable at entry—nonimmigrant not in possession of a valid nonimmigrant visa, nor exempted therefrom.

ON BEHALF OF RESPONDENT:
Howard L. Kushner, Esquire
730 Main Street
Niagara Falls, New York 14301

ON BEHALF OF SERVICE:
Paul C. Vincent
Appellate Trial Attorney

In a decision dated July 17, 1973, an immigration judge found the respondent deportable under section 241(a)(1) of the Immigration and Nationality Act, and granted him the privilege of voluntary departure. The respondent contests the finding of deportability and has appealed from that decision. The appeal will be dismissed.

The respondent was born on July 19, 1945 in the Philippines. He was admitted to the United States in October of 1971 as a nonimmigrant visitor for pleasure. The Immigration and Naturalization Service has alleged that the respondent is deportable as a nonimmigrant alien who at the time of entry was not in possession of a valid visa. The respondent has challenged both the finding of alienage and the finding that he did not possess a valid nonimmigrant visa.

In deportation proceedings the Service bears the burden of proving alienage. The respondent, however, concedes that he was born in the Philippines. Since he admits birth in a foreign country, he is presumed to be an alien and must go forward with the evidence to establish his claim to United States citizenship. *Matter of Tijerina-Villarreal*, 13 I. & N. Dec. 327 (BIA 1969); *Matter of A-M-*, 7 I. & N. Dec. 332 (BIA 1956).

The respondent has set forth several theories under which he claims to be either a citizen or a noncitizen national of the United States. He initially argues that his birth in the Philippines made him a national of the United States, and that absent an election on his part Congress could not constitutionally divest him of that nationality. This basic contention, however, has been rejected by the courts on several occasions. See *Rabang v. Boyd*, 353 U.S. 427 (1957); *Manlangit v. United States Department of Justice*, 488 F.2d 1073 (C.A. 4, 1973).

The respondent's other contentions as to United States citizenship or nationality are equally groundless. He has failed to set forth even the rudiments of a claim to derivative citizenship. Moreover, the argument that his father's service in the United States Navy caused the respondent to be born constructively within the United States in not even colorable. We find that the respondent is an alien and properly subject to deportation proceedings.

At the commencement of the hearing below, counsel for the respondent sought to have the case heard before an immigration judge other than the one who actually presided. The record is not clear; however, it appears that a preliminary conference on the case was held and that the immigration judge who attended that conference ordered the hearing postponed for several months to permit the respondent time to assemble evidence regarding his claim to United States citizenship. Counsel for the respondent alleges that an understanding regarding possible termination of the proceedings was reached at that conference, and he contends that the respondent was prejudiced by the "substitution" at the actual hearing of a new immigration judge. Counsel asserts that he even offered to have his client pay for any expenses involved in transferring the hearing to a location where the immigration judge who attended the conference could preside.

The substitution of immigration judges is governed by 8 CFR 242.8(B), which in pertinent part provides:

> . . . If a hearing has begun but no evidence has been adduced other than by the respondent's pleading pursuant to § 242.16(b), or if [an immigration judge] becomes unavailable to complete his duties within a reasonable time, or if at any time the respondent consents to a substitution, another [immigration judge] may be assigned to complete the case. . . .

It does not appear that a formal hearing was commenced before the immigration judge who authorized a postponement in this case. Cer-

tainly, no evidence was presented for the record before anyone other than the immigration judge who rendered the decision. The regulation plainly authorizes the substitution of immigration judges under these circumstances. Furthermore, there are indications in the record that it was geographically inconvenient for the immigration judge who was initially associated with the case to preside at the hearing. The respondent's offer to present himself for a hearing at a location convenient to that immigration judge appears to be little more than an attempt to seek out a favorable forum. We find that the substitution of immigration judges in this case did not deprive the respondent of a fair hearing. See *Matter of Molcilio*, 14 I. & N. Dec. 283 (BIA 1973); *Matter of Bark*, 14 I. & N. Dec. 237 (BIA 1972); *Matter of C–*, 5 I. & N. Dec. 743 (BIA 1954).

The respondent's final challenge to the finding of deportability relates to the admissibility and sufficiency of the evidence against him. The respondent contests the Service's factual allegation that he was "not in possession of a nonimmigrant visa" at the time of his admission into the United States. The respondent's passport, issued to him by the Republic of the Philippines, was introduced into evidence at the hearing, and a photocopy of the passport now appears in the record. The passport contains what appears to be a nonimmigrant visa issued or authorized by a United States consular official in Manila. The Service alleges that this visa was not properly issued to the respondent, and that it is likely counterfeit.

The Service's case as to the invalidity of the visa was largely documentary. A verbatim transcript of the respondent's sworn question and answer interview before a Service investigator was introduced into evidence. The transcript of the interview reflects that when initially asked where he obtained the visa, the respondent asserted that he got it from "the American Embassy in Manila, Philippines." (Exhibit 2). At first, he also maintained that he had never been denied a nonimmigrant visa by the United States Embassy in Manila. However, when the Service investigator confronted the respondent with information contradicting these assertions, the respondent substantially changed his testimony.

The respondent then told the investigator that he had gone to a travel agency in the Philippines to receive assistance with his nonimmigrant visa application. An employee of the travel agency accompanied the respondent to the United States Embassy on at least two occasions, and the respondent was eventually denied a visa.

The respondent further testified before the investigator that the travel agent then suggested that the passport be left at the travel agency and that the agent would attempt to complete the necessary work and to obtain the visa. The respondent maintains that he entrusted the passport to the travel agent for over one month and was then

informed by the agent that the visa had been issued. The respondent did not obtain the visa at the United States Embassy, but instead paid the travel agent $500 for this service. The respondent admitted that the $500 was a lot of money, but asserted that it is difficult to obtain a visa and that he was saved much time and trouble by this procedure.

The respondent has adhered to the second version of how he obtained the visa. Furthermore, he asserts that he has no direct knowledge that the visa was not properly issued, and insists through counsel that the Service has failed to prove the visa invalid.

The respondent did not object to the introduction into evidence of the transcript of the question and answer interview. However, he did challenge the admissibility of the evidence which forms the bulk of the Service's case. The Service successfully introduced into evidence its written inquiry to the United States Embassy in Manila regarding the respondent's visa, and the unsworn letter signed by the American Consul in Manila in response to that inquiry. In this letter the American Consul states that the respondent had been denied a visa on several occasions in February and March of 1971, that the nonimmigrant visa number appearing on the respondent's visa was issued to a female alien, and that during 1971 there had been a rash of counterfeit visas. The body of the letter recites specific factual information regarding the alien to whom the nonimmigrant visa number appearing in the respondent's passport was actually issued. In support of his statements, the American Consul attached to the letter photocopies of the respondent's and the other alien's visa applications.

At the hearing, counsel objected to the introduction of these letters, asserting that the statements should be introduced only in conjunction with testimony which would afford him the right of cross-examination. The immigration judge overruled this objection. In his brief on appeal, counsel also asserts that this evidence should not have been admitted because it is hearsay.

The respondent's hearsay objection is inappropriate. The hearsay nature of a given item of evidence may well have a substantial effect on the probative value of that evidence; however, if relevant, hearsay evidence is admissible in deportation proceedings. See *U.S. ex rel. Vajtauer* v. *Commissioner of Immigration*, 273 U.S. 103 (1927); *U.S. ex rel. Bilokumsky* v. *Tod*, 263 U.S. 149 (1923); *U.S. ex rel. Impastato* v. *O'Rourke*, 211 F.2d 609 (C.A. 8, 1954), cert. denied, 348 U.S. 827 (1954); *de Hernandez* v. *INS*, 498 F.2d 919 (C.A. 9, 1974); *Solis-Davila* v. *INS*, 456 F.2d 424 (C.A. 5, 1972). Furthermore, the visa applications are official documents, and the notations on the applications appear to have been made in the course of official business.

Section 242(b) of the Act provides in part that an alien in deportation proceedings "shall have a reasonable opportunity . . . to cross-examine

witnesses presented by the Government . . . ." However, this right to reasonable cross-examine does not necessarily include a right to have each witness actually produced at the hearing. See *Hyun* v. *Landon*, 219 F.2d 404 (C.A. 9, 1955), affirmed by an equally divided court, 350 U.S. 990 (1956).

The regulations specifically authorize both the admission into evidence of relevant oral or written statements and, in appropriate situations, the taking of depositions at the request of any party. See 8 CFR 242.14. The respondent's counsel could have requested cross-examination through the use of written interrogatories; however, he merely rested on his objection to the admissibility of evidence.

. We are not dealing with the case of an unrepresented alien. Prior to the hearing, the respondent and his attorney were aware that the Service had information challenging the authenticity of the visa. See Exhibit 2.

Counsel for the respondent could have effectively accomplished cross-examination of the otherwise unavailable witness. See *Matter of Payan*, 14 I. & N. Dec. 58 (BIA 1972); *Matter of Conliffe*, 13 I. & N. Dec. 95 (BIA 1968). He did not seek the opportunity to do so. He has not shown any prejudice to the respondent, who received a fair hearing. See *Richardson* v. *Perales*, 402 U.S. 389 (1971); *Marlowe* v. *INS*, 457 F.2d 1314 (C.A. 9, 1972); *Wei* v. *Robinson*, 246 F.2d 739, 746 (C.A. 7, 1957), cert. denied, 355 U.S. 879 (1957); *Matter of N—*, 9 I. & N. Dec. 506, 508–09 (BIA 1961).

The evidence that the respondent gained admission to the United States on the basis of a forged nonimmigrant visa, in effect no visa at all, is clear. The photocopies of the visa applications clearly show that the nonimmigrant visa number appearing in the respondent's passport was issued to an alien other than the respondent. The letter from the American Consul confirms this information. We find that the respondent's deportability has been established by clear, convincing and unequivocal evidence. The appeal will be dismissed.

**ORDER:** The appeal is dismissed.

*Further order:* Pursuant to the immigration judge's order, the respondent is permitted to depart from the United States voluntarily within 92 days from the date of this order or any extension beyond that time as may be granted by the district director; and in the event of failure so to depart, the respondent shall be deported as provided in the immigration judge's order.