## MATTER OF BENITEZ

In Deportation Proceedings

A-26433002

*Decided by Board October 3, 1984*

(1) The burden and presumption of section 291 of the Immigration and Nationality Act, 8 U.S.C. § 1361 (1982), are applicable not only to a charge of entry without inspection, but to any charge of deportability which draws into question the time, place, or manner of the alien's entry into the United States.

(2) Deportability under section 241(a)(1) of the Act, 8 U.S.C. § 1251(a)(1) (1982), as one who was excludable at entry as a stowaway under section 212(a)(18) of the Act, 8 U.S.C. § 1182(a)(18) (1982), is established by the respondent's admission of birth in Colombia and the presumption of section 291 of the Act, where the respondent failed to meet his burden to show the time, place, and manner of his entry into the United States.

CHARGE:

Order: Act of 1952—Sec. 241(a)(1) [8 U.S.C. § 1251(a)(1)]—Excludable at entry under section 212(a)(18) [8 U.S.C. § 1182(a)(18)]—Stowaway

ON BEHALF OF RESPONDENT:
Lisa S. Brodyaga, Esquire
301 East Madison
Harlingen Texas 78550

ON BEHALF OF SERVICE:
William P. Joyce
Acting Appellate
Trial Attorney

BY: Milhollan, Chairman; Maniatis, Dunne, Morris, and Vacca, Board Members

In a decision dated March 5, 1982, an immigration judge found the respondent deportable on the charge set forth above and ordered him deported. The respondent has appealed. The record will be remanded to the immigration judge for further proceedings.

The respondent is a 22-year-old male, a native and citizen of Colombia, who entered the United States approximately October 1, 1981, at Tampa, Florida. On December 4, 1981, an Order to Show Cause, Notice of Hearing, and Warrant for Arrest of Alien (Form I-221S) was issued, charging the respondent with deportability under section 241(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(1) (1976), for having been excludable at entry under

173

section 212(a)(18) of the Act, 8 U.S.C. § 1182(a)(18) (1976), as a stowaway.

At his deportation hearing, the respondent identified himself as Javier Benitez-Tavarez and testified that he was born in Colombia. The respondent then refused to answer further questions. The Immigration and Naturalization Service also offered into evidence an affidavit dated December 4, 1981, in which the respondent allegedly admitted that he was a native and citizen of Colombia and that he came to the United States as a stowaway aboard a ship called the "Union Reefer," arriving at Tampa, Florida.

At the hearing, the respondent, through counsel, asked the immigration judge to continue the case to permit the Service to answer his Freedom of Information Act request for items of evidence in the Service's files. The Service opposed the motion and the immigration judge denied it. The respondent also filed a motion to suppress information contained in his A-file. The immigration judge denied this motion. The respondent objected to the admission of his affidavit, contending that it should be suppressed because of the failure to warn him of his rights. He objected on the ground that the document shows on its face that no interpreter was used, while the document is written in English and this respondent neither speaks nor reads English. The respondent also objected to the admission of this document because it was not authenticated and because the officer who completed the document was not present for cross-examination. The immigration judge overruled these objections and admitted the affidavit into evidence.

On appeal, the respondent contends that the immigration judge erred in failing to grant his request for a continuance; that the immigration judge erred in admitting his affidavit because it was not authenticated and admission of the document denied him his right to cross-examine the officer who completed that document; that the immigration judge erred in denying his motion to suppress the evidence because of a violation of his constitutional rights; that the immigration judge erred in denying him a separate suppression hearing; and finally, that the evidence is insufficient to prove deportability.

The respondent's request for a continuance was in essence a request for discovery. We note that the Federal Rules of Civil Procedure are not applicable in deportation proceedings, and there is no requirement that a request for discovery be honored. *See* Federal Rules of Civil Procedure 1, describing the scope of the rules; *see also Matter of Magana,* 17 I&N Dec. 111 (BIA 1979). The regulations provide that a continuance may be granted by the immigration judge, in his discretion, if good cause is shown. 8 C.F.R.

§ 242.13 (1984). A decision to deny a continuance will not be over-
turned on appeal unless it appears that the respondent was de-
prived of a full and fair hearing. *Matter of Leyva,* 16 I&N Dec. 118
(BIA 1977); *Matter of Namio,* 14 I&N Dec. 412 (BIA 1973). We con-
clude that the immigration judge did not abuse his discretion in de-
nying the respondent's request for a continuance.

There is no independent motion practice in deportation proceed-
ings. Neither the Immigration and Nationality Act, the regula-
tions, nor case law gives a respondent the right to a separate hear-
ing on a motion to suppress evidence. Indeed, the Supreme Court
has recently ruled that deportation proceedings are civil, not crimi-
nal, and the exclusionary rule is not applicable in deportation pro-
ceedings as a remedy for a violation of a respondent's fourth
amendment rights. *INS* v. *Lopez-Mendoza,* 468 U.S. 1032 (1984).

We need not resolve the issue whether the respondent's affidavit
was properly admitted into evidence despite the lack of opportunity
to cross-examine the officer who reduced it to writing. We find the
record sufficient to support the finding of deportability without
that affidavit, based upon the respondent's admissions at the hear-
ing and the presumption of section 291 of the Act, 8 U.S.C. § 1361
(1982).

The respondent testified at the hearing that he is Javier Benitez-
Tavarez and that he was born in Colombia. He refused to answer
when asked for the name of the city in which he was born or how
he last entered the United States. The immigration judge conclud-
ed that the respondent's admission of birth in Colombia established
his alienage and shifted to him the burden under section 291 of the
Act of establishing the time, place, and manner of his entry into
the United States.

Counsel for the respondent questioned the sufficiency of the re-
spondent's admission and suggested that the respondent might
have meant Columbia, Maryland, or some other Columbia in the
United States. This argument is also brought forward on appeal.

Counsel's suggestion that the respondent could have meant Co-
lumbia, Maryland, is frivolous. It is clear from the record that the
immigration judge and the general attorney interpreted the re-
spondent to mean Colombia, South America, as well they might
since the hearing was being conducted utilizing the services of a
Spanish interpreter. The respondent had the benefit of legal coun-
sel, who would know that birth in the United States would almost
certainly mean United States citizenship and no deportation for
this respondent. Therefore, if the respondent had meant Columbia,
Maryland, or Columbia anywhere else, United States, he would
have said so when this issue came up at the hearing. Instead, he

refused to testify further. Furthermore, even now on appeal, he does not explain that he meant Columbia, United States, but he argues that what he said was ambiguous.

One born abroad is presumed to be an alien until he or she shows otherwise. *Corona-Palomera* v. *INS*, 661 F.2d 814 (9th Cir. 1981); *United States ex rel. Rongetti* v. *Neelly*, 207 F.2d 281 (7th Cir. 1953); *Matter of Ponco*, 15 I&N Dec. 120 (BIA 1974); *Matter of Tijerina-Villarreal*, 13 I&N Dec. 327 (BIA 1969); *Matter of A–M–*, 7 I&N Dec. 332 (BIA 1956).

In reaching his decision, the immigration judge relied in part upon the presumption of section 291 of the Act which arises from an alien's failure to show the time, place, and manner of his entry into the United States. We recognize that the United States Court of Appeals for the Ninth Circuit has stated that the presumption of section 291 is inapplicable in a deportation case in which the charge is entry as a nonimmigrant and remaining beyond the time authorized. The Court said in dicta that the presumption of section 291 applies only in cases involving illegal entry. *Iran* v. *INS*, 656 F.2d 469, 471 (9th Cir. 1981). We will now examine this issue.

To determine what the statute means, we look first at the language of the statute. *INS* v. *Phinpathya*, 464 U.S. 183 (1984); *United States* v. *Rodgers*, 466 U.S. 475 (1984). Section 291 of the Act, in pertinent part, provides:

> In any deportation proceeding under Chapter 5 against any person, the burden of proof shall be upon such person to show the time, place, and manner of his entry into the United States, but in presenting such proof he shall be entitled to the production of his visa or other entry document, if any, and of any other documents and records, not considered by the Attorney General to be confidential, pertaining to such entry in the custody of the Service. If such burden of proof is not sustained, such person shall be presumed to be in the United States in violation of law.

The language chosen by Congress does not suggest that it intended that the burden and presumption of section 291 would be limited to a single ground of deportability or a single class of aliens. Indeed the language of section 291 provides, "[i]n *any* deportation proceeding under Chapter 5." (Emphasis added.) Chapter 5 indicates that it pertains to "[a]ny alien in the United States."

While section 291 does not specify the precise nature of the presumed unlawful status, we have held that it must operate in conjunction with the grounds of deportability set forth in section 241(a) (Chapter 5) of the Act. *Matter of Fereira*, 14 I&N Dec. 509 (BIA 1973). One of the grounds set forth therein, section 241(a)(2), is very similar to the presumption of section 291. It provides for the deportation of any alien who "entered the United States without inspection . . . or *is in the United States in violation of this Act or*

*in violation of any other law of the United States."* (Emphasis added.)

The United States Supreme Court has held that in deportation proceedings there is no presumption of citizenship similar to the presumption of innocence which exists in criminal cases. *Lopez-Mendoza* v. *INS, supra* (quoting *United States ex rel. Bilokumsky* v. *Tod,* 263 U.S. 149 (1923)). The literal language of section 291 indicates that once alienage is established, the presumption is that the alien is in the United States in violation of law until he or she establishes the time, place, and manner of entry into the United States. The significance of this information is that it will normally establish whether the alien has or ever had any right to be in the United States, *i.e.,* whether he was admitted as a lawful permanent resident, as a nonimmigrant visitor for business or pleasure, or on any other lawful basis. This information permits the Service to verify the respondent's claim by checking the records relative to the time and place of the alleged entry. It also facilitates the regulation of aliens in the United States by hindering their ability to thwart the law by simply refusing to disclose information. If an alien refuses to provide information about the time, place, and manner of his entry, he is presumed to be in the United States unlawfully.

We also note that section 291 has been in our current law since 1952, and a similar provision has been in our immigration law since the Immigration Act of 1924. Although we have not attempted fully to define its applicability, we have held it applicable with respect to charges of deportability laid under section 241(a)(1) alleging that the respondent was excludable at entry under section 212(a)(20) for lack of a valid visa, *Matter of R-S-,* 7 I&N Dec. 271 (BIA, A.G. 1956); with respect to a charge under section 241(a)(2) for entry after denial of permission to land as a crewman, *Matter of Pang,* 11 I&N Dec. 213 (BIA 1965); with respect to a charge under section 241(a)(2) as a crewman who remained longer, *Matter of Wong and Chan,* 13 I&N Dec. 141 (BIA 1969), and *Matter of Wong,* 13 I&N Dec. 820 (BIA 1971); and with respect to a charge under section 241(a)(2) as a nonimmigrant visitor who remained longer than permitted, *Matter of Davila,* 15 I&N Dec. 781 (BIA 1976), *remanded, Davila-Villacaba* v. *INS,* 594 F.2d 242 (9th Cir. 1979). Of course we have also held it applicable with respect to a charge under section 241(a)(2) of the Act alleging entry without inspection. *Matter of Carrillo,* 17 I&N Dec. 30 (BIA 1979); *Matter of Castro,* 16 I&N Dec. 81 (BIA 1976); *Matter of Gonzalez,* 16 I&N Dec. 44 (BIA 1976); *Matter of Bulos,* 15 I&N Dec. 645 (BIA 1976); *Matter of Fereira, supra.*

We hold that the burden and presumption of section 291 of the Act are applicable with respect to any charge of deportability which draws into question the time, place, or manner of the alien's entry into the United States. The dicta of *Iran* v. *INS, supra,* will not be applied here because this case does not arise within the jurisdiction of the Ninth Circuit Court of Appeals and because we do not find the reasoning of *Iran* to be persuasive.

In *Iran,* the court noted that section 291, by its terms applies to "any deportation proceeding" and, if read literally, could be applied in all deportation proceedings. However, the court stated that it must be read to apply only in deportation proceedings which involve illegal entry [1] for three reasons. We will repeat and examine these reasons.

First, the court said there would be no reason to require proof on the issue of illegal entry in cases not involving that issue. This reasoning assumes the question in issue—that is, that the "the time, place, and manner" of an alien's entry has significance in a deportation proceeding only if the entry is illegal and/or these facts serve to prove the alien deportable. In fact, in any case in which the lawfulness of the alien's presence in the United States is at issue, proof of the alien's time, place, and manner of entry into the United States may well establish his right to be in the United States, and thus, accomplish the purpose of a deportation hearing.[2] For instance, it could establish that he was admitted to the United States as an immigrant for permanent residence or as a nonimmigrant student, visitor, fiance, etc., or even that he is in the United States lawfully as a parolee pursuant to section 212(d)(5) of the Act.

Moreover, the time, place, and manner of an alien's entry into the United States are material to charges of deportability other than the single charge of entry without inspection. Section 241(a)(1) provides for the deportation of any alien who, at the time of entry was within one or more of the classes of aliens excludable by the law existing at the time of such entry. Section 241(a)(2) provides for the deportation of any alien who entered the United States (a)

---

[1] "Illegal entry" is not one of the grounds of deportability spelled out in section 241(a) of the Immigration and Nationality Act. The court did not explain what it meant by this term, but we assume that it was referring to "entry without inspection," as that is a ground of deportability under section 241(a)(2) and entry without inspection was the charge in *Tejeda-Mata* v. *INS,* 626 F.2d 721 (9th Cir. 1980), cited by the court. Entry without inspection is also a criminal violation under section 275 of the Act, 8 U.S.C. § 1325 (1982).

[2] A deportation proceeding is initiated with the issuance of an order to the alien to show cause why he should not be deported. 8 C.F.R. § 242.1 (1984). The fact that the alien has a right to remain in the United States would satisfy this requirement and indicate that the proceedings should be terminated.

without inspection or (b) at any time or place other than as designated by the Attorney General, or any alien who is in the United States (c) in violation of this Act or, (d) in violation of any other law of the United States. Sections 241(a) (3) and (4) both provide grounds of deportability for offenses arising within 5 years after entry.[3]

Section 291 of the Act itself also contains a significant indication that Congress did not intend that these provisions apply only with respect to entry without inspection. The statute provides in connection with the respondent's burden of showing the time, place, and manner of entry into the United States that "he shall be entitled to the production of his visa or other entry document, if any, and of any other documents and records, not considered by the Attorney General to be confidential, pertaining to such entry in the custody of the Service."

An alien does not need a visa to enter the United States without inspection and if an alien has a valid visa, he has no reason to enter without inspection and substantial reason to submit himself for inspection. Further, since an alien who enters without inspection by definition is not inspected, the Attorney General could not normally be expected to have a record of such an event. By entitling the respondent to the production of entry documents in section 291, Congress clearly contemplated that that section, including the presumption, would apply to all entries into the United States, not just entries without inspection.

We have examined the legislative history of section 291 in an effort to find out what Congress intended. We found nothing dispositive. However, we did find that there was a provision similar to section 291 in the previous Act. *See* Immigration Act of 1924, ch. 190, § 23, 43 Stat. 165–66, *repealed by* Immigration and Nationality Act of 1952, ch. 477, Title IV, § 403(a)(23), 66 Stat. 279. That section provided:

[A]nd in any deportation proceeding against any alien the burden of proof shall be upon such alien to show that he entered the United States lawfully, and the time, place, and manner of such entry into the United States, but in presenting such proof he shall be entitled to the production of his immigration visa, if any, or of other documents concerning such entry, in the custody of the Department of Justice.

This provision was changed in two important respects when it was incorporated into section 291 of the 1952 Act. Congress deleted

---

[3] We do not here attempt to present an exhaustive list of all the grounds of deportability to which the time, place, or manner of the alien's entry into the United States might be material. We only cite these to demonstrate that these elements are material to charges of deportability in addition to entry without inspection.

the requirement for the alien to show that he entered the United States lawfully. It retained the provision placing the burden upon the alien to show the time, place, and manner of entry into the United States, and it added the provision that if the alien fails to meet his burden, he is presumed to be in the United States in violation of law.

We note that neither the former statute, nor the current one, even mentions illegal entry into the United States. Rather, section 291 provides that the alien who fails to meet his burden shall be presumed to be *in the United States in violation of law.*

In its second reason for limiting section 291 to charges of illegal entry, the *Iran* court found it apparent that section 291 was not intended to be an independent source of substantive law but a procedural rule modifying the allocation of proof on the issue of illegal entry.

It is not apparent to us that section 291 was not intended as an independent source of substantive law. We have held that it is not a charge upon which to base deportability. *Matter of Li,* 12 I&N Dec. 293 (BIA 1967). Bases for deportability appear in Chapter 5 of the Act, which is entitled "Deportation; Adjustment of Status," while section 291 appears in Chapter 9, "Miscellaneous." However, section 291 does not have to stand alone, and when it is combined with a charge under section 241(a)(2) of the Act (that the alien "is in the United States in violation of this Act or in violation of any other law of the United States"), it provides a substantive basis for deportation. Further, the similarity of the wording between the presumption set forth in section 291 and that portion of the charge set forth in 241(a)(2), above, strongly suggests that Congress intended that these two sections be read together.

The court's third reason why section 291 should be limited to cases of illegal entry is that applying section 291 in cases where illegal entry was not an element of the charge of deportability would raise a serious constitutional question because deportation on a charge not presented in the Order to Show Cause or at the hearing offends due process, at least in the Ninth Circuit. *Whetstone* v. *INS,* 561 F.2d 1303 (9th Cir. 1977); *Hirsch* v. *INS,* 308 F.2d 562 (9th Cir. 1962). The court commented that "[i]f section 1361 were applied in such cases, and the person who is the subject of the proceedings failed to meet his or her burden, that person would be deportable on the ground of illegal entry, a ground not charged." *Iran* v. *INS, supra,* at 471–72.

This reason does raise the question whether section 291 can be used as a basis for deportability when the Order to Show Cause does not indicate to the alien that he will be required to establish

180

the time, place, and manner of his entry into the United States at his deportation hearing. We need not decide this issue here because the matter was raised at the hearing below.[4] We share the court's concern about the fairness of a deportation proceeding in which the respondent does not have notice of the nature of the charges against which he must defend. *See* section 242(b)(1) of the Act, 8 U.S.C. § 1252(b)(1) (1982); 8 C.F.R. § 242.16 (1984). However, this should not normally present a problem because the matter will come to the alien's attention during the hearing, and if the alien is surprised by the requirement, he can request a continuance.

In this case, the respondent admitted that he was born in Colombia. The respondent is charged with deportability under section 241(a)(1) of the Act for being excludable at entry under section 212(a)(18) of the Act as a stowaway. This charge draws his entry into question and therefore section 291 is applicable. The respondent was apprised at the hearing of his obligation under section 291 to show the time, place, and manner of entry into the United States. As he made no effort to meet his burden, he is presumed to be in the United States in violation of law, and his deportability is established.

The respondent applied for voluntary departure but refused to testify in support of his application because he feared that his testimony would be used to establish deportability. Both the immigration judge and counsel for the respondent were under the impression that the respondent's testimony in support of his application for voluntary departure could be used to establish deportability. However, this assumption was wrong. In *Matter of Bulos, supra,* we held that the testimony of a respondent in connection with his application for voluntary departure must not be used for purposes of establishing or confirming alienage or deportability. *See also* 8 C.F.R. § 242.17(e) (1984); *Matter of Sandoval,* 17 I&N Dec. 70 (BIA 1979).

Under the circumstances, we will remand the case to give the respondent an opportunity to establish that he is eligible for and deserving of a grant of voluntary departure. Accordingly, the following order will be entered.

ORDER: The record is remanded to the immigration judge for further proceedings consistent with the foregoing opinion and the entry of a new decision.

---

[4] We note, initially, that the question of the applicability of section 291 was raised by the general attorney at the hearing. The respondent did not object, request a continuance, or argue that the presumption was not applicable.