245 F.2d 812
 George VLISIDIS, Appellant,
v.
J. W. HOLLAND, District Director, Immigration and Naturalization Service.
Nicholaos MAVRELOS, Appellant,
v.
J. W. HOLLAND, District Director, Immigration and Naturalization Service.
 No. 12246.
 No. 12247.
 United States Court of Appeals Third Circuit.
 Argued June 13, 1957.
 Decided July 3, 1957.
 Rehearing Denied July 29, 1957.
 
 J. J. Kilimnik, Philadelphia, Pa., for appellants.
 Louis O. Bechtle, Asst. U. S. Attorney, Philadelphia, Pa., for appellee.
 Before MARIS, STALEY and HASTIE, Circuit Judges.
 HASTIE, Circuit Judge.
 
 
 1
 Plaintiffs Vlisidis and Mavrelos are persons whom a Special Inquiry Officer of the Immigration and Naturalization Service has found, after hearing, to be alien crewmen, citizens of Greece, who were permitted to enter this country temporarily in non-immigrant status and thereafter remained here illegally. Accordingly, their deportation was ordered. The plaintiffs then challenged these deportation orders in the district court by filing complaints against the responsible regional officer of the Immigration and Naturalization Service under the Declaratory Judgments Act, 28 U.S.C. §§ 2201, 2202 and the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., alleging that due process of law had been denied them in the administrative proceedings. In each case the district court granted summary judgment denying relief and the plaintiff has appealed.
 
 
 2
 The two cases are very much alike and we will consider them together. We find only one argument on each appeal that is sufficiently substantial to require discussion and analysis. That is the argument that the Special Inquiry Officer penalized these individuals in an unconstitutional way by drawing an unfavorable inference against each of them because, claiming privilege under the 5th Amendment, he had refused to testify at the deportation hearing about his origin, citizenship or stay in this country, and also had refused to identify certain documents.
 
 
 3
 For purposes of the present analysis we will outline the occurrences in the Mavrelos case and will refer to Vlisidis only where a significant difference appears. At the beginning of the hearing the respondent identified himself as Nicholaos Mavrelos and was sworn as a witness. He admitted that he was present in response to a letter addressed to him at his residence and notifying him to be present at this hearing to show cause why he should not be deported. He was also shown a warrant of arrest charging one Nicholaos Mavrelos with having entered this country at a given time and place as an alien crewman and with remaining illegally in violation of the conditions of his temporary entry. He then refused to identify the warrant or to comment upon it, claiming privilege under the 5th Amendment. He also refused to answer questions about his birth and citizenship and the circumstances of his presence in the United States. He refused to identify various documents and statements which were exhibited to him. Despite this refusal, and without any other testimony about the documents, they were made part of the record.
 
 
 4
 We find it necessary to discuss only one of these documents. It was a printed Form 1-95A of the Immigration Service, entitled "Crewman's Landing Permit". It appeared to be an original document duly executed and signed by an immigration officer and countersigned by "N. Mavrelos" as a Greek national who had entered this country as a seaman at the port of New Orleans on October 19, 1954, and had been granted permission to remain not more than twenty-nine days. Such a Crewman's Landing Permit is an official document prescribed and required by the Regulations of the Immigration and Naturalization Service, 8 C.F.R. §§ 251.31, 252.1. Thus, on its face the paper before the Special Inquiry Officer appeared to be an official and required record of the Immigration Service. We think that such a paper may with reason and propriety be regarded in any administrative proceeding, and certainly in one of that agency, as bearing on its face such indicia of authenticity as to be received in evidence without need for identification by one of its signers. Certainly there can be no valid objection to the use of such evidence if the document is first shown to the respondent whose name appears thereon and opportunity afforded him to impeach it if he so desires. No inference need be drawn from the refusal of the respondent to identify the document in order to make it admissible. The propriety of using it as evidence that an alien seaman named Nicholaos Mavrelos entered the United States under the circumstances therein indicated derives solely from its apparent regularity and official character.
 
 
 5
 Beyond this, the identity of the respondent's name — an unusual one in this country — with the name of the alien seaman whose record of entry was before the Special Inquiry Officer justified an inference, absent any showing to the contrary, that respondent was that seaman.
 
 
 6
 A Crewman's Landing Permit was introduced and used in the same way in the case of Vlisidis. In addition, a purported Greek passport was exhibited to him and an English translation of its relevant part was read into the record. It had been issued to "George Vlisidis", a Greek citizen, and appeared regular on its face. It also contained a picture which the Special Inquiry Officer compared with the appearance of the respondent. He then stated for the record that the photograph was the likeness of the man before him. The same procedure was followed in the case of a Greek "diploma" bearing a photographic likeness of the man who was in court and stating, as translated, that he was a qualified seaman.
 
 
 7
 In each case we are satisfied that there was a proper and adequate evidentiary basis for a finding that the person before the inquiry officer was an alien who had remained in this country beyond the authorization of his temporary entry. Actually, it was necessary to show only the single fact that the respondent was an alien, for, once that is proved, the legislative scheme requires the alien to justify his presence in the United States. 66 Stat. 234, 8 U.S.C.A. § 1361. Neither of the parties here attempted any such showing of lawful presence.
 
 
 8
 In these circumstances, we think the appellants have not been prejudiced in any way because of their invocation of the 5th Amendment. The essential fact of alienage was established quite apart from that action. We, therefore, find it unnecessary to comment upon those cases relied upon by the government as establishing the propriety of drawing an unfavorable inference from a respondent's invocation of the 5th Amendment in a deportation proceeding. United States ex rel. Vajtauer v. Commissioner of Immigration, 1927, 273 U.S. 103, 111, 47 S.Ct. 302, 71 L.Ed. 560; United States ex rel. Zapp v. District Director of Immigration and Naturalization, 2 Cir. 1941, 120 F.2d 762; Hyun v. Landon, 9 Cir. 1955, 219 F.2d 404, affirmed by an equally divided court, 1956, 350 U.S. 990, 76 S.Ct. 541, 100 L.Ed. 856.
 
 
 9
 The judgment will be affirmed.