MATTER OF J——

## In DEPORTATION Proceedings

### A-3322627

*Decided by Board February 23, 1960*

Evidence—Failure to testify—Unfavorable inference proper only after *prima facie* case of deportability is established.

Unfavorable inference from alien's refusal to testify can be drawn only after a *prima facie* case of deportability has been established. Record should also reflect that the alien was requested to give testimony, that there was a refusal to testify, and the ground of the refusal.

CHARGE:

Order: Act of 1952—Section 241(a)(6) [8 U.S.C. 1251(a)(6)]—Member of or affiliated with the Communist Party of the United States after entry.

### BEFORE THE BOARD

**Discussion:** This is an appeal from the order of the special inquiry officer requiring respondent's deportation on the ground stated above.

Respondent, a 55-year-old married female, a native and last a national of Russia, has been a resident of the United States since her admission for permanent residence in 1905. The special inquiry officer found that she had been a member of the Communist Party of the United States at least in the years 1946 through 1949. The appeal will be sustained.

The case was previously before us on appeal. On November 18, 1958, we reopened proceedings so that statements made by Government witnesses prior to the hearing might be made available to respondent. Reopened hearing was held on June 24, 1959. At the reopened hearing, a statement made by Government witness M—— was produced; M—— was called as a witness; he identified the statement as one he had made in 1954; and over objection of counsel the statement was put into the record. Counsel refused to examine the witness. The examining officer said there were no other statements known to the Government. Counsel was not permitted to question the examining officer on this matter. An offer was made to recall the other witnesses to make them available to counsel for questioning concerning statements they had made. Counsel rejected

the offer. He asked that a hearing *de novo* be given. By briefs and at the two oral arguments, counsel raised questions of due process and the constitutionality of the laws governing the case; he argued, that the evidence is not reasonable, substantial, and probative and that even if Communist Party membership is established it is of such a "nominal" nature that proceedings must be terminated; that hearing should have been reopened *de novo;* that respondent should have the right to question the examining officer to determine whether other statements existed which might have to be produced; and that it was improper to draw a presumption from the silence of respondent.

The Service representative argued the evidence is sufficient; that the examining officer's claim as to the nonexistence of additional statements should have been sufficient; that in any event counsel was given an opportunity to reexamine the witnesses to determine if there were statements, and did not; that an inference has not been drawn from the silence of respondent, but that the evidence of the Government stands uncontroverted; and that the hearing officer handled the case properly.

The burden of proving that respondent was a member of the Communist Party is upon the Government. This burden requires the Service to establish its case by evidence that is reasonable, substantial, and probative. Respondent has been in the United States for 55 years. She was eight months old when she entered. She is married to a citizen of the United States and has two United States citizen children. We cannot say that the proof which is required has been furnished by the Service.

The special inquiry officer rested his case upon these matters:

(1) Respondent attended closed Communist Party meetings;

(2) Respondent's name appears in a Communist Party bulletin as one who recruited members;

(3) Respondent sold the "Daily Worker," Communist Party paper.

We shall deal with each of the items seriatim. Attendance at closed meetings of the Communist Party is found from testimony of M——. At the hearing, M—— testified that he had been a member of the Communist Party from 1936 to 1940 and from 1942 to 1948. He stated that he collected dues; that some of the Communist Party meetings were restricted only to members; that he first met respondent (C——J——) at a picnic in about 1947 or 1948; that in 1947 and 1948 she occasionally attended meetings of the Communist Party restricted only to members; and that he had been at open meetings with respondent. He could not give an estimate of the number of meetings because he could not recall. He testified that respondent took part in the meetings, but he could not recall enough about the meetings to give details. He said that respondent

sold the "Daily Worker"; and that when they had "an affair or something" he had seen her at work in the kitchen scrubbing. He said that he had a membership card but that he could not say whether respondent had one. He stated that he did not know "any other J——s as members" of the Communist Party during the period of his membership.

A statement made by M—— prior to the hearing reveals that he was asked whether he knew a person by the name of "C——J—— or Mrs. R——J——" and that he replied that he "was acquainted with a person known as Mrs. R——J——"; that he first met her in about 1937 or 1938; that he met her at meetings of the International Workers Order; and that during 1946 and 1947 he saw her on several occasions at closed meetings of the Communist Party. He said that he could not recall having ever seen either her Communist Party card or payment of Communist Party dues by her. He stated that respondent would have had to have been a member of the Communist Party to have attended the meetings and that he knew respondent's husband R——J—— to have attended closed meetings of the Communist Party.

We can give M——'s testimony little weight. His recollection is admittedly poor. He could not recall what went on at the meetings or what respondent did there. His statement made in 1954 differs from his testimony at the hearing as to when he first met respondent and the years he saw her at Communist Party meetings. In his statement, he apparently attempted to make the distinction between knowing Mrs. R——J—— and C——J—— and each reference to respondent was in terms of Mrs. J—— or Mrs. R——J——. Yet, at the hearing, he identified respondent as if he had known her as C——J——. At the hearing, the witness testified he did not know any other J——s as a member of the Communist Party; yet, his statement in 1954 reveals that he knew that R——J—— attended closed meetings of the Communist Party which were open only to members of the Party. Moreover, it is strange that the witness, who had the duty of collecting dues, did not collect from respondent. In view of the limited association M—— had with respondent, the passage of time, his poor recollection, the discrepancies in his testimony, and the lack of care in making the distinctions that he knew about, we cannot find M——'s testimony reasonable, substantial, and probative proof of membership in the Communist Party. The record also fails to establish how M—— knew that the meetings were closed meetings.

The special inquiry officer has found that respondent's name appears in a 1946 Communist Party bulletin as one who recruited members. Exhibit 5 shows that one "C. J——" was an active worker in recruiting members for the Communist Party. The special in-

quiry officer found that respondent is the "C. J——." The special inquiry officer came to this conclusion because street directories for the area listed only one "C. J——," and M—— had testified that he knew no other J—— who was a member of the Communist Party. The special inquiry officer concluded that because of the possibility of error and because the "C. J——" listed could have lived out of the area, the directories of themselves were of little or no evidentiary value. He gave them weight only because of M——'s testimony that he knew no other J—— who was a member of the Communist Party. There are two reasons why M——'s statement can add nothing to the weight to be given the directories: (1) M—— knew at least one other J—— who was a member of the Communist Party and did not reveal it, and (2) there is nothing to show that M—— knew all the members of the Communist Party in the area.

The special inquiry officer found the sale of the "Daily Worker" significant because C—— testified that he knew no one who distributed the Communist Party paper who was not a member of the Communist Party, except for distribution at newsstands and places of business. However, this witness did not testify that he knew all the persons who distributed the paper, and that he knew they were Communist Party members. He did not know respondent. He did not testify that the rules of the Communist Party forbade the sale of the "Daily Worker" by others than Communist Party members. This evidence is neither substantial nor probative. The special inquiry officer found that respondent had been a member of the Communist Party from 1946 through 1949. The only "evidence" as to membership in 1949 is the testimony that respondent solicited a subscription to the "Daily Worker" from a non-Communist and left copies with him for distribution to customers in his store. This evidence is not sufficient.

The final item for consideration is the fact that respondent did not testify. The special inquiry officer did not state that he assigned any weight to her silence in arriving at a determination that respondent had joined the Communist Party. He did state that it prevented respondent from proving that her membership had been "nominal." At oral argument, the Service representative stated that there is no issue as to the drawing of an inference, since none was drawn, but that the issue is merely whether the unrebutted evidence is sufficient. We shall set forth the matters of record which bear upon respondent's failure to testify. At the outset of the hearing, the special inquiry officer informed counsel:

* * * Before you do that [make motions], however, I understand that you will not have the respondent testify in this proceeding.

By Counsel:

That's right.

571

By SPECIAL INQUIRY OFFICER:

Well, in that case, Mrs. J—— needn't sit in the chair any more. She can sit alongside of you and then you can make your motions. (p. 4, hearing February 24, 1958)

At the reopened hearing, respondent was not called upon to testify. The only other reference in the record to testimony by respondent is found in a question-and-answer statement taken over 3 years before the hearing by Service investigators. (This statement was taken after respondent, refusing to obey a subpoena issued by the Service, had been ordered to appear by a United States District Court. She had apparently taken the position that the Service could not require the appearance of a person who was not entering or passing through the United States.) At that time, respondent refused to testify on many subjects including her family; membership in the Communist Party or the International Workers Order; and attendance at functions of the American Youth for Democracy, the Progressive Party, the Ohio Civil Rights Congress, and the Progressive Women. She refused to testify on a claim of privilege. (The special inquiry officer's statement that respondent refused to testify at both hearings must be viewed in light of the facts we have set forth.)

We have held that it is proper to draw an unfavorable inference from an alien's refusal to answer pertinent questions, after a *prima facie* case of deportability has been established (*Matter of O——*, 6 I. & N. Dec. 246). We do not believe a *prima facie* case of deportability was established here. Suspicion cannot be solidified into proof by the mere silence of respondent (*United States ex rel. Kettunen v. Reimer*, 79 F.2d 315, 317 (C.A. 2, 1935)). Moreover, a record of hearing should clearly show that an alien was called upon to give testimony, that there was a refusal to testify, and the ground of the refusal. It is also well to inform an alien who refuses to testify that the Government is entitled to draw an unfavorable inference from the failure. There is a failure to prove either membership or affiliation. Proceedings will be terminated. Because of the action we take, we shall not discuss the many points raised by counsel.

At the second oral argument, counsel took the special inquiry officer to task for the way in which he had cross-examined Government witness P——. (The special inquiry officer examined P—— to determine if he was motivated by animosity in testifying against respondent.) Counsel contends that the special inquiry officer interfered with the cross-examination of counsel, taking over in the middle of counsel's cross-examination, and that when the special inquiry officer developed that animosity existed against respondent, he refused to let counsel take over the examination. The record is to the contrary. The special inquiry officer did not commence the cross-

572

examination of P—— until counsel had indicated that he *had fin-ished* with the witness. It is to the special inquiry officer's credit that he discovered and developed the animosity that P—— had toward respondent and determined the extent to which it influenced P——'s testimony. After the existence of animosity was developed, counsel did not request that he be permitted to develop the matter. After the special inquiry officer had completed his examination, he informed counsel he was at liberty to interrogate the witness but counsel stated he had no questions. The special inquiry officer conducted the case in an impartial manner.

**Order:** It is ordered that the appeal be and the same is hereby sustained and that the proceedings be terminated.