MATTER OF CHEUNG

In Deportation Proceedings

A-15171770

*Decided by Board November 30, 1971*

Where respondent, after stating his name and that he understood the charge brought against him, refused to testify at his deportation hearing, deportability under section 241(a)(2), Immigration and Nationality Act, is established by clear, convincing and unequivocal evidence on the basis of (a) the identity of names of respondent and of the crewman who is the subject of documents which were in possession of the Service before respondent's apprehension (seaman's Identity Book, Arrival Manifest (Form I-418), and the carrier's report of the desertion of a crewman), and (b) the failure of respondent to show that the documents do not relate to him.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant crewman—remained longer.

ON BEHALF OF RESPONDENT:
Peter Zimmerman, Esquire
100 State Street
Boston, Massachusetts 02109

ON BEHALF OF SERVICE:
Irving A. Appleman
Appellate Trial Attorney

Respondent appeals from the special inquiry officer's order requiring his deportation. The appeal will be dismissed. Voluntary departure will be granted.

The facts have been fully stated by the special inquiry officer. Respondent refused to testify on the advice of counsel. He did not claim his answers would incriminate him. He did state he is Cheung-Shui and that he understood the charge brought against him (pp. 1-3). Counsel contends that the order of deportation is based on documents the Service obtained by the illegal arrest and search of the respondent. In finding respondent deportable, we rely solely upon evidence which was in possession of the Service before the respondent's arrest which occurred on or about June 5, 1970.

At the deportation hearing, the Service introduced in evidence a certified copy of a page of an arrival manifest (Form I–418) showing the arrival of the carrier "Athelknight" at Philadelphia, Pennsylvania on February 11, 1970. Listed among the crew of the vessel is one Cheung Shui, a Chinese national bearing passport No. 68774. He is shown to have been admitted as "D–1" (admitted with a conditional landing permit as an alien crewman). Part of the same exhibit is a report concerning the desertion of a crewman. The report, dated February 13, 1970, was made by the vessel's agent to the Service. This report shows the desertion of Cheung Shui, a native and national of China who had been issued Identity Book No. 68774. The report shows the book was in the possession of the Immigration Service at Philadelphia (Ex. 5).

The Service also produced Identity Book No. 68774 in the name of Cheung Shui. It bears a photograph which the special inquiry officer stated was a good likeness of the respondent. From it, the special inquiry officer read into the record information showing that Cheung Shui was born at Po On, Kwang Tung Province, China on September 4, 1914 (p. 4).

The evidence we have set forth comes from official and required Service records or is otherwise competent. The arrival manifest (Form I–418) must be submitted by the master or agent of the vessel to the immigration officer at the point of first arrival, 8 CFR 251.1(a). The immigration officer who examines the crewmen listed on the manifest must show what action he took on the applications for admission of the crewmen listed. To show that he granted an alien crewman a conditional landing permit as a crewman he must use the symbol "D–1", 8 CFR 251.1(d). Such an authorization to land can be granted only if the crewman's passport is surrendered for safekeeping to the master of the arriving vessel, 8 CFR 252.1(d).[1]

As soon as the master or agent of the vessel discovers that an alien crewman has illegally landed or deserted he must write to the immigration officer in charge of the port where the act occurred, giving him "the name, nationality, passport number" and other details concerning the crewman and "any other information and documents which might aid in his apprenenshion, including any passports surrendered pursuant to" 8 CFR 252.1(d), 8 CFR 251.2.

Thus, competent evidence in the possession of the Service before respondent's apprehension establishes that Cheung Shui, a

---

[1] The crewman is admitted for a period not exceeding 29 days, 8 CFR 252.1(d).

Chinese native and national, was admitted to the United States as a crewman and deserted, *Au Chiu Pang* v. *INS*, 368 F.2d 637 (3 Cir., 1966), cert. denied 386 U.S. 1037 sustaining *Matter of Pang*, 12 I. & N. Dec. 489 (BIA, 1966); *Valeros* v. *INS*, 387 F.2d 921 (7 Cir., 1967); *Williams* v. *Mulcahey*, 250 F.2d 127 (6 Cir., 1957), cert. denied 356 U.S. 946 (1958), affirming *Williams* v. *Butterfield*, 145 F. Supp. 567 (E.D. Mich., 1956); *Vlisidis* v. *Holland*, 245 F.2d 812 (3 Cir., 1957); *Coelho* v. *Brownell*, 240 F.2d 635 (D.C. Cir., 1957); *Doto* v. *United States*, 223 F.2d 309, 310 (D.C. Cir., 1955), cert. denied 350 U.S. 847 (1955); *United States* v. *Klissas*, 218 F. Supp. 880, 883–884 (D.C. Md., 1963); *Da Silva Pereira* v. *Murff*, 169 F. Supp. 81 (D.C. N.Y., 1958); and *Goncalves-Rosa* v. *Shaughnessy*, 151 F. Supp. 906 (S.D. N.Y., 1957).

Do these documents relate to respondent? We find they do. The identity of names of the respondent and the crewman who is the subject of the evidence we have discussed and the failure of respondent to show that the records do not relate to him, although he had the opportunity to do so, permit the inference that the records relate to him, *Valeros* v. *INS, supra*; *Au Chiu Pang* v. *INS, supra*; *Vlisidis* v. *Holland, supra*; *Da Silva Pereira* v. *Murff, supra*. Moreover, we note the special inquiry officer stated that the photograph in the passport surrendered by the deserting crewman is a good likeness of the respondent. Finally, although it is unnecessary to rely upon the fact, we point out that respondent's failure to testify without having claimed the privilege against self-incrimination is corroboration of the relation of the Service evidence, *Valeros* v. *INS, supra*; *Au Chiu Pang* v. *INS, supra*; *Quilodran-Brau* v. *Holland*, 232 F.2d 183, 185 (3 Cir., 1956); *U.S. ex rel. Circella* v. *Sahli*, 216 F.2d 33, 39 (7 Cir., 1954), cert. denied 348 U.S. 964 (1955). The documents set forth, all in the possession of the Government before the respondent was placed under proceedings, are clear, convincing and unequivocal evidence of the validity of the Service charge. Deportability is clearly established.

Since we have utilitzed only evidence already in the Service's possession before the apprehension of the respondent, and since that evidence is clearly competent and standing alone establishes deportability, we deem it unnecessary to discuss counsel's contentions that the Service illegally arrested respondent and illegally seized documents from him. Nor is it necessary to discuss counsel's contention, in his memorandum of November 5, 1971, as to where the burden of proof lies when a motion to suppress is filed, *Valeros* v. *INS, supra*; *Au Chiu Pang* v. *INS, supra*; *Medeiros* v.

*Brownell*, 240 F.2d 634 (D.C. Cir., 1957); *and Da Silva Pereira* **v.** *Murff, supra.*[1]

The special inquiry officer denied voluntary departure. Without impugning his judgment, we feel that a brief period of voluntary departure should be granted here. We shall give respondent 30 days to depart voluntarily.

**ORDER:** The outstanding order of deportation is withdrawn and the alien is permitted to depart from the United States voluntarily without expense to the Government, to any country of his choice, within such period of time, in any event not less than 30 days, and under such conditions as the officer-in-charge of the District deems appropriate.

*Further order:* If the alien does not depart from the United States in accordance with the foregoing, the order of deportation will be reinstated and executed.

---

[2] We would point out, however, that counsel's claim that the Identity Book No. 68778 was taken from the respondent by a Service illegal arrest, search and seizure is without basis in fact (p. 4). The record shows that the document was in the possession of the Service before respondent's apprehension (Ex. 5). Counsel's allegation is not supported by an affidavit from the respondent and the basis of the claim is not given. We have previously pointed out the danger which can exist when counsel does not exercise proper care to establish the basis for a claim of illegal arrest and search, *Matter of Tang,* Interim Decision No. 2080 (BIA, 1971).