## MATTER OF TSANG

### In Deportation Proceedings

#### A-15999353

*Decided by Board February 16, 1973*

(1) Where an alien presented no evidence in support of his motion to suppress on the claim that he had been illegally arrested and that the documents entered into evidence to establish his deportability were obtained as a result of the illegal arrest, his motion was properly denied by the special inquiry officer for lack of justification since on a motion to suppress he has the burden of establishing prima facie that the evidence was unlawfully obtained.

(2) An alien's refusal to testify regarding his deportability on a claim of self-incrimination is not a factor which should weigh against the exercise of discretion (voluntary departure, in the instant case) in his favor. However, merely because relief may not be denied in the exercise of discretion on the basis of a self-incrimination claim does not mean that it may not be denied in the exercise of discretion on some other basis.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant crewman—remained longer.

ON BEHALF OF RESPONDENT:
Peter Zimmerman, Esquire
100 State Street
Boston, Massachusetts 02109

Attorney of Record:
Joseph F. O'Neil, Esquire

ON BEHALF OF SERVICE:
Irving A. Appleman
Appellate Trial Attorney

The respondent appeals from an order of deportation entered by the special inquiry officer. The appeal will be dismissed.

The record relates to a male alien of Chinese nationality, 45 years of age. He entered the United States as a nonimmigrant crewman on September 23, 1968 and deserted his ship at Norfolk, Virginia on or about October 10, 1968.

Respondent refused to testify regarding his deportability at the deportation hearing, invoking the privilege against self-incrimination in the Fifth Amendment to the Constitution. He did testify on behalf of his application for voluntary departure.

As evidence of deportability, his seaman's discharge book was

294

read into evidence as was his Hong Kong seaman's identity book. Both show his place of birth as China. Also admitted into evidence was a certified copy of the arrival-departure record of the crew of the M/V "Ocean Splendour" which shows respondent's arrival with and desertion from that ship.

The respondent moved to suppress the introduction of these documents as evidence on the ground that he had been illegally arrested and that the documents were obtained as a result of the illegal arrest. The respondent submitted no evidence tending to establish that his arrest was illegal or that any evidence was unlawfully obtained from him.

On a motion to suppress the defendant has the burden of establishing that the evidence was unlawfully obtained, *United States* v. *Lyon*, 397 F.2d 505 (C.A. 7, 1968).

See also *Nardone* v. *United States*, 308 U.S. 338 (1939); *United States* v. *Garcia*, 272 F. Supp. 286 (S.D.N.Y., 1967). This rule, which is applied in criminal cases, has been adopted for use in deportation hearings, *Matter of Tang*, 13 I. & N. Dec 691 (BIA, 1971). Therefore, the special inquiry officer correctly denied the respondent's motion to suppress on the ground that the respondent had presented no justification for his motion.

Furthermore, there is no showing here that any of the documents introduced was obtained either directly or indirectly as a result of the respondent's arrest. Those particular documents would normally be independently in the possession of the Immigration Service. Seaman's books are retained by the carrier and sent to the Immigration Service upon the desertion of a seaman to whom they relate. Arrival and departure lists are official records given to the Immigration and Naturalization Service in the ordinary course of business by carriers. Thus, competent evidence which was in possession of the Service, independently of respondent's apprehension, establishes that Hon Kwan Tsang, a Chinese national, was admitted to the United States as a crewman and deserted. The documents introduced constitute clear, convincing and unequivocal evidence of deportability. We do not draw any inference from respondent's silence.

The special inquiry officer denied voluntary departure as a matter of discretion because respondent, by asserting the privilege against self-incrimination and consequently refusing to testify in regard to deportability, had put the Immigration and Naturalization Service to additional time, trouble and expense in securing evidence of deportability. The cases have held, however, that adverse action may not be based on silence under a self-incrimination claim; otherwise the prospect of adverse action would cut down on the privilege by making its assertion costly, *Spevack* v.

*Klein,* 385 U.S. 511 (1967), *Griffin* v. *Calif.,* 380 U.S. 609 (1965). Furthermore, the regulations by implication recognize that an alien who refuses to testify on issues involving deportability may nevertheless be granted voluntary departure, 8 CFR 242.17(d). Thus, an alien has the right to refuse to testify with regard to the matter of his deportability without thereby forfeiting his opportunity to receive voluntary departure.

Of course, merely because relief may not be denied in the exercise of discretion on the basis of a self-incrimination claim does not mean that it may not be denied in the exercise of discretion on some other basis. The alien has the burden to establish eligibility for voluntary departure, both that he is statutorily eligible and that he merits the favorable exercise of discretion. The statutory requirement is five years of good moral character, section 244(e). The regulations specify the requirement that the alien establish that he is willing, and has the immediate means with which, to depart promptly, 8 CFR 244.1.

Whether discretion should be exercised in favor of a particular alien depends upon the facts of the individual case. In order to achieve a measure of uniformity in cases involving applications for voluntary departure by crewmen, this Board has previously set forth certain guide lines, *Matter of M—,* 4 I. & N. Dec. 626 (BIA, 1952). Inquiry should be made whether the alien was a bona fide crewman at the time of entry as against one who intended to stay permanently and used the crewman status merely as a means to effect entry. Because it is difficult to determine whether a particular alien was a bona fide crewman or not, we held that a respondent should usually have been a crewman for at least one year before being granted voluntary departure, *Matter of M—, supra.* If it is clear that at the time of entry a respondent intended to stay permanently in the United States, normally voluntary departure should be denied as a matter of discretion, with an exception in the case of an alien who has served as a crewman for many years. If an alien crewman has been previously granted voluntary departure, whether he departed pursuant thereto or failed to avail himself of the privilege, we have held that such is an adverse factor militating against another grant of voluntary departure.

We wish to emphasize that while these guide lines should be considered they do not set forth an invariable rule, *Matter of T—,* 5 I. & N. Dec. 736 (BIA, 1954), and they do not relieve the special inquiry officer from his duty of exercising the discretion which is entrusted to him. He should consider all the relevant factors present in the case before him and base his decision thereon accordingly.

This record establishes that at the time of entry to the United States, respondent had been a crewman for about eleven years (Tr. of hearing, p. 5). Eleven years is a substantial length of time. The respondent has never previously violated our immigration laws. This is his first request for voluntary departure. He has the ability to depart at his own expense and will depart within the time allotted, according to his testimony. We find that respondent merits voluntary departure. We do not consider his refusal to testify regarding his deportability as a factor which should weigh against the exercise of discretion in his favor.

**ORDER:** The respondent is granted voluntary departure from the United States without expense to the Government, to any country of his choice, within such period of time, in any event not less than 30 days, and under such conditions as the officer-in-charge of the District deems appropriate.

**FURTHER ORDER:** If the respondent does not depart from the United States in accordance with the foregoing, he shall be deported to Hong Kong on the charge contained in the order to show cause.

**FURTHER ORDER:** If the aforenamed country declines to accept the respondent into its territory or fails to advise the Attorney General within three months following original inquiry whether it will or will not accept the respondent into its territory, the respondent shall be deported to the Republic of China on Formosa.