# MATTER OF GUEVARA

## In Deportation Proceedings

## A-29017722

*Decided by Board September 14, 1990*
*Decided by Board January 31, 1991*

(1) A respondent in deportation proceedings who remains silent when confronted with evidence of his alienage, the circumstances of his entry, or his deportability, may leave himself open to adverse inferences, which may properly lead in turn to a finding of deportability against him.

(2) In deportation proceedings, the respondent's silence alone, in the absence of any other evidence of record, is insufficient to constitute prima facie evidence of the respondent's alienage and is therefore also insufficient to establish the respondent's deportability by clear, unequivocal, and convincing evidence.

(3) Whether or not the Government's purported grant of immunity from prosecution is actually valid, the Immigration and Naturalization Service may not rely on the respondent's silence alone to establish a prima facie case of alienage and deportability.

(4) The immigration judge's finding that the Service had established the respondent's alienage and deportability on the basis of the respondent's silence alone was found to be erroneous, and the Board of Immigration Appeals terminated the deportation proceedings.

(5) Where the Service did not seek to modify its case against the respondent, but merely requested an additional opportunity to make a second effort at proving the same allegations and charge which had already been advanced unsuccessfully, regulations at 8 C.F.R. §§ 3.28 and 242.16(d) (1990) did not apply, and the Board dismissed the Service's motion to reconsider.

CHARGE:

Order: Act of 1952—Sec. 241(a)(2) [8 U.S.C. § 1251(a)(2)]—Entered without inspection

ON BEHALF OF RESPONDENT:
Judith Gail Dein, Esquire
Warner & Stackpole
75 State Street
Boston, Massachusetts 02109

ON BEHALF OF SERVICE:
Frank Crowley
General Attorney

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

## BEFORE THE BOARD
### (September 14, 1990)

In a ruling made on September 19, 1989, an immigration judge found the respondent deportable as charged under section 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2) (1988), as an alien who entered the United States without inspection. He ordered the case continued to September 13, 1990, for preparation of any applications for relief from deportation. The respondent then filed this appeal. The appeal will be sustained, and the deportation proceedings will be terminated.

The decision which the respondent wishes this Board to review is interlocutory in nature. The Board of Immigration Appeals does not ordinarily entertain interlocutory appeals. *See Matter of Ruiz-Campuzano,* 17 I&N Dec. 108 (BIA 1979); *Matter of Ku,* 15 I&N Dec. 712 (BIA 1976); *Matter of Sacco,* 15 I&N Dec. 109 (BIA 1974). However, we have on occasion ruled on the merits of interlocutory appeals where we deemed it necessary to address important jurisdictional questions regarding the administration of the immigration laws, or to correct recurring problems in the handling of cases by immigration judges. *See Matter of Garcia-Reyes,* 19 I&N Dec. 830 (BIA 1988); *Matter of Rosales,* 19 I&N Dec. 655 (BIA 1988); *Matter of Amico,* 19 I&N Dec. 652 (BIA 1988); *Matter of Correa,* 19 I&N Dec. 130 (BIA 1984); *Matter of Victorino,* 18 I&N Dec. 259 (BIA 1982); *Matter of Alphonse,* 18 I&N Dec. 178 (BIA 1981); *Matter of Wadas,* 17 I&N Dec. 346 (BIA 1980); *Matter of Seren,* 15 I&N Dec. 590 (BIA 1976); *Matter of Fong,* 14 I&N Dec. 670 (BIA 1974).

By an Order to Show Cause, Notice of Hearing, and Warrant for Arrest of Alien (Form I-221S) dated October 21, 1988, the respondent is alleged to be a native and citizen of El Salvador and is charged with entering the United States without inspection on December 15, 1987, in violation of section 241(a)(2) of the Act.

The essential procedural facts in the case are not in dispute. On May 8, 1989, the respondent contested the allegations on the Order to Show Cause and apparently informed the immigration judge, through counsel, that any evidence produced by the Immigration and Naturalization Service as a result of his apprehension would be the subject of a motion to suppress. The immigration judge ordered the case continued. On September 19, 1989, the respondent again appeared before the immigration judge and was called as a witness by counsel for the Service. However, the respondent refused to answer any questions other than as to his identity, asserting, as a basis for such refusal, his privilege against self-incrimination under the fifth amendment to the Constitution of the United States. The immigration judge then

239

Interim Decision #3143

informed the respondent of the existence of an "Agency Order," issued by the Service and dated September 5, 1989. The order directs the respondent to testify and purports to immunize him from the future use, in any criminal proceeding, of any testimony he may give in the deportation proceeding, thereby removing the respondent's fifth amendment privilege against self-incrimination as it relates to these proceedings. Counsel for the respondent objected to the order as an invalid grant of immunity.[1] The respondent still refused to testify based on his fifth amendment privilege against self-incrimination.[2] The Service presented no evidence to establish the respondent's alienage and deportability other than the respondent's silence in the face of questioning. The immigration judge found, in view of the grant of immunity from prosecution, that the respondent's silence was no longer privileged under the fifth amendment, since there was no remaining danger of self-incrimination. He therefore drew an adverse inference from the respondent's silence and found that the respondent was an alien, as alleged. He further determined that the burden of proof shifted to the respondent under section 291 of the Act, 8 U.S.C. § 1361 (1988), noted that the respondent had not established the time, place, or manner of his entry, and consequently found the respondent deportable as charged. He then ordered a continuance for the purpose of preparing any possible requests for relief from deportation.

On interlocutory appeal from the immigration judge's determination of deportability, the respondent, through counsel, urges essentially that the grant of immunity was invalid, and that the silence of the respondent alone is insufficient evidence of deportability to sustain a finding of deportability by clear, unequivocal, and convincing evidence. He further argues that it is urgent that these issues be determined on interlocutory appeal, since if they are not so determined, the respondent will be faced with the unfair choice of either waiving his privilege against self-incrimination for criminal purposes

---

[1] The Agency Order produced by the Service does not appear in the record. However, counsel for the respondent has provided a copy of such an order, consistent with the description in the brief for the Service. The respondent has submitted evidence to suggest that a standard order of this type has been used in some 25 other cases likely to appear before this Board. The order is signed by a general attorney for the Service, with an attachment in the form of a letter from the Assistant Attorney General. The attachment purports to grant the general attorney the authority to issue the Agency Order described above, "provided that the testimony ... may be necessary to the public interest." The letter cites as authority for this procedure 18 U.S.C. §§ 6002 and 6004 (1988) and 28 C.F.R. § 0.175 (1989). We do not here address the validity of the order. We decide the case on other grounds.

[2] Section 275 of the Immigration and Nationality Act, 8 U.S.C. § 1325 (1988), makes it a crime for any alien to enter the United States at any time or place other than as designated by immigration officers.

240

in order to apply for relief, or remaining silent and being ordered deported, in spite of eligibility for such relief. In view of this possible prejudice to the constitutional rights of the respondent,[3] and the likely occurrence of similar circumstances in the case of a number of others apprehended at the same time and place as evidenced by affidavits in the record, he submits that this case is appropriate for interlocutory consideration.

The Service argues in its brief that the grant of immunity was valid, that unprivileged silence may be the most persuasive kind of evidence of a respondent's alienage, and that the respondent's silence in this case was therefore sufficient in itself to establish his alienage. The Service also argues that the respondent's continued silence further establishes his deportability by the requisite standard of proof, and that the immigration judge's determination was therefore correct. The Service opposes interlocutory consideration of the case.

For purposes of the instant case, we will assume without deciding that the grant of immunity by the Service was valid, and the respondent's silence was therefore unprivileged. We observe that under the circumstances presented, the result would be the same in either event. Thus, the essential question presented is whether the respondent's silence in the face of questioning by the Service counsel at the hearing before the immigration judge constituted enough evidence to shift the burden of proof to the respondent under section 291 of the Act, such that his continued silence properly resulted in a finding that his deportability was established by clear, unequivocal, and convincing evidence.

We note at the outset that under certain circumstances, an adverse inference may indeed be drawn from a respondent's silence in deportation proceedings. *See INS v. Lopez-Mendoza*, 468 U.S. 1032 (1984); *United States ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S. 103 (1927) (admitted alien; adverse evidence strengthened by his silence); *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149

---

[3] *See Wehling v. Columbia Broadcasting System*, 608 F.2d 1084, 1089 (5th Cir. 1979) (court will not force a man to choose between self-incriminating statements and severe civil consequences; discovery stayed for 3 years to allow criminal statute of limitations to expire, rather than force litigant to abandon suit); *see also Garrity v. New Jersey*, 385 U.S. 493 (1967) (the State Attorney General is not permitted to force police officers to choose between incriminating themselves by providing requested information pursuant to an internal investigation, and losing their jobs; conviction of officers reversed); *Spevack v. Klein*, 385 U.S. 511 (1967) (attorney cannot be required to choose between self-incrimination and disbarment). *But see Black Panther Party v. Smith*, 661 F.2d 1243 (D.C. Cir. 1981), *vacated sub nom. Moore v. Black Panther Party*, 458 U.S. 1118 (1982) (circuit court had remanded the case for balancing test where Huey Newton of the Black Panthers refused to answer questions based on fifth amendment privilege; Supreme Court vacated with instructions to dismiss).

(1923); *United States v. Sing Tuck*, 194 U.S. 161 (1904) (exclusion proceedings; simple assertion of citizenship plus silence thereafter is not enough to avert exclusion and deportation); *United States v. Alderete-Deras*, 743 F.2d 645 (9th Cir. 1984); *Cabral-Avila v. INS*, 589 F.2d 957 (9th Cir. 1978), *cert. denied*, 440 U.S. 920 (1979) (prima facie case of deportability not rebutted by alien's silence); *Hyun v. Landon*, 219 F.2d 404 (9th Cir. 1955), *aff'd*, 350 U.S. 990 (1956) (adverse testimony of others strengthened by alien's refusal to testify); *Matter of Carrillo*, 17 I&N Dec. 30 (BIA 1979) (after burden of proof was shifted to respondent, silence was not enough to avert deportability); *Matter of R-S-*, 7 I&N Dec. 271 (BIA, A.G. 1956) (prior statement plus respondent's silence at hearing sufficient to show deportability).[4] Thus, it is clear that when confronted with evidence of, for example, the respondent's alienage, the circumstances of his entry, or his deportability, a respondent who remains silent may leave himself open to adverse inferences, which may properly lead in turn to a finding of deportability against him.

However, this proposition, and the cases which support it, are not controlling in the instant case. They do not relate to the situation at the outset of a hearing, prior to the introduction of evidence by the Government. Therefore, they by no means mitigate the clear requirement established by the Supreme Court, and codified in current regulations, that the burden of proof in deportation proceedings is upon the Service to establish the alienage of the respondent, and ultimately his deportability, by evidence that is clear, unequivocal, and convincing. *Woodby v. INS*, 385 U.S. 276 (1966); 8 C.F.R. § 242.14(a) (1990).

Under the circumstances presented here, the respondent's silence alone does not provide sufficient evidence, in the absence of any other evidence of record at all, to establish a prima facie case of alienage, sufficient to shift the burden of proof to the respondent under section 291 of the Act. It is true, as the Service points out in its brief, that in *Bilokumsky v. Tod, supra*, the Supreme Court stated, "Conduct which forms a basis for inference is evidence. Silence is often evidence of the most persuasive character." *Id.* at 153-54. However, the respondent's silence in that case was not the only evidence of record. It rather

---

[4] The respondent argues that an adverse inference may not be drawn from his silence, citing *Tashnizi v. INS*, 585 F.2d 781 (5th Cir. 1978); *Chavez-Raya v. INS*, 519 F.2d 397 (7th Cir. 1975); *Matter of Gonzalez*, 16 I&N Dec. 44, 47 (BIA 1976); *Matter of Tsang*, 14 I&N Dec. 294, 295 (BIA 1973); *Matter of Wong*, 13 I&N Dec. 820, 823 n.3 (BIA 1971) (proper claim of privilege). However, the circuit court cases cited are clearly inapposite, and the Board precedents do not express such a holding. They merely represent instances wherein we declined to draw an adverse inference based on privileged silence, where evidence of deportability was sufficient even without such an inference.

tended to support other evidence of record, including a prior statement by the alien and a landing certificate.[5]

Similarly, in another case cited by the Service, *Cabral-Avila v. INS, supra,* the finding of deportability was not based solely upon the petitioners' silence. Rather, the Service first established a prima facie case of deportability, through the introduction of official forms executed in connection with the petitioners' prior entry to the United States, containing evidence of alienage and deportability. The burden of proof only then shifted to the petitioners to show the time, place, and manner of their entry in accordance with section 291 of the Act. In this context the court stated, "[T]heir [privileged] silence cannot be relied upon to carry forward their duty to rebut the Government's *prima facie* case." *Id.* at 959. In short, the Government's case was not established by the petitioners' silence, but by independent evidence which such silence simply did not rebut.

Nor has this Board in the past found silence alone to be enough to establish the Service's prima facie case of the respondent's alienage by the requisite standard of proof. On the contrary, while we have held that a respondent's silence may fairly corroborate other evidence presented for the record, *see Matter of Cheung,* 13 I&N Dec. 794, 796 (BIA 1971), we have also stated that "[s]uspicion cannot be solidified into proof by the mere silence of respondent." *Matter of J-,* 8 I&N Dec. 568, 572 (BIA 1960); *see also United States ex rel. Kettunen v. Reimer,* 79 F.2d 315, 317 (2d Cir. 1935) (while a respondent's refusal to testify "may have some evidential force ... , it is no more than a scintilla in the setting here"). We have also noted that section 291 of the Act comes into play in an appropriate case only when the Service has presented a prima facie case of alienage. *Matter of Sandoval,* 17 I&N Dec. 70 (BIA 1979); *see also, e.g., Iran v. INS,* 656 F.2d 469 (9th Cir. 1981) (burden of proof shifts to respondent only after prima facie case is established); *Matter of J-, supra* (proper to draw unfavorable inference from silence only after prima facie case is established); *Matter of O-,* 6 I&N Dec. 246 (BIA 1954) (same).

The Service argues in its brief on interlocutory appeal that our decision in *Matter of Santos,* 19 I&N Dec. 105 (BIA 1984), enunciates a position contrary to the respondent's argument and requires a finding that the immigration judge's determination of deportability in the instant case was correct. We disagree. In *Matter of Santos, supra,* we observed indeed that a respondent has no right to remain silent at his deportation hearing when he is asked nonincriminating questions.

---

[5] It was in this context that the court stated, "To defeat deportation it is not always enough for the person arrested to stand mute at the hearing and put the government upon its proof." *Bilokumsky v. Tod, supra,* at 155.

We stated further that a respondent is in fact "under an obligation to answer any questions truthfully or suffer the adverse inferences that could be drawn from his silence." *Matter of Santos, supra,* at 110 (citing *Vajtauer v. Commissioner, supra,* at 110; *Bilokumsky v. Tod, supra,* at 154; *Chavez-Raya v. INS,* 519 F.2d 397, 401 (7th Cir. 1975)). However, we did not hold in *Santos* that a respondent may properly be found deportable, in the absence of any substantive evidence produced by the Service, based solely upon the adverse inference drawn from his silence. Under the circumstances presented in the instant case, such a finding of deportability was not properly made.

The legal concept of a "burden of proof" requires that the party upon whom the burden rests carry such burden by presenting evidence. If the only evidence necessary to satisfy this burden were the silence of the other party, then for all practical purposes, the burden would actually fall upon the silent party from the outset. Under this standard, every deportation proceeding would begin with an adverse inference which the respondent would be required to rebut. We cannot rewrite the Act to reflect such a shift in the burden of proof. *Woodby v. INS, supra;* 8 C.F.R. § 242.14(a) (1990); *see also Iran v. INS, supra* (only when the Service has satisfied its burden of proving the facts supporting deportability by clear, unequivocal, and convincing evidence does the burden shift to the respondent under section 291 of the Act); *Matter of Benitez,* 19 I&N Dec. 173 (BIA 1984) (burden shifts to respondent once the Government establishes his alienage); *Matter of Sandoval, supra.* In short, if the "burden" of proof were satisfied by a respondent's silence alone, it would be practically no burden at all. *See, e.g., Navia Duran v. INS,* 568 F.2d 803 (1st Cir. 1977) (all evidence other than respondent's silence suppressed; burden of proving deportability therefore not met).

In the instant case, the respondent was called to testify, denied the allegations in the Order to Show Cause, and thereafter elected to remain silent in the face of questions by the Service. The Service introduced no other evidence.[6] The record is therefore altogether silent as to the respondent's place of birth, subsequent changes of status, or other relevant data, apart from the bare allegations and charge reflected in the Order to Show Cause itself. As such, the burden of proof has not shifted to the alien under section 291 of the Act, and deportability has not been established by evidence which is clear, unequivocal, and convincing. We find, therefore, that under the

---

[6]The Service brief on appeal indicates that certain relevant Service documents were served on respondent's counsel. However, whether by deliberate choice or otherwise, they were not submitted for admission into evidence.

circumstances, the determination of the respondent's deportability was not properly made.

Since the immigration judge has granted a continuance below only for purposes of considering relief from deportation, no further evidence is likely to be presented on the deportability issue. As we have determined deportability to be insufficiently established, there is no further reason to consider relief from deportation in this case. Consequently, the deportation proceedings will be terminated.

**ORDER:** The interlocutory appeal is sustained, and the deportation proceedings are terminated.

BEFORE THE BOARD
(January 31, 1991)

This case first came before us on interlocutory appeal from a September 19, 1989, ruling of the immigration judge, which found the respondent deportable as charged. We sustained the interlocutory appeal and terminated the proceedings in a decision dated September 14, 1990. The Immigration and Naturalization Service then filed this motion to reconsider our prior decision. The motion will be denied, and our prior decision in the case will be affirmed.

The facts of the case were recounted in our prior decision and may be summarized briefly as follows. The respondent was charged with being an alien who entered the United States without inspection. He contested the charge, refused to testify except as to his identity, invoked the fifth amendment, and stated, through counsel, that he would move to suppress any evidence the Service introduced. The Service then offered no evidence, but issued an "Agency Order" purporting to immunize the respondent from use of his testimony in any criminal proceedings. The Service thereafter relied solely upon the respondent's continued silence in the face of questioning, as evidence of his deportability. The immigration judge found him deportable and ordered a continuance for preparation of any applications for relief from deportation.

The respondent then filed an interlocutory appeal. He argued that the deportability finding was erroneous, and that his rights under the Constitution would be jeopardized at a continued hearing. He pointed out that numerous other cases based on the same facts were also pending, and he requested termination of the proceedings. The Service, on the other hand, argued that deportability had already been established, and it requested that the case be allowed to continue, uninterrupted, to the relief stage. We accepted the interlocutory appeal. We found that the respondent's silence alone was insufficient to satisfy the Service's burden of establishing deportability by the requisite standard of proof. We therefore terminated the proceedings.

245

The Service does not now dispute the substantive reasoning behind this decision. Rather, the Service moves that we reconsider our termination of the proceedings, and that the record be remanded to the immigration judge so that the Service may present additional evidence of alienage and deportability.

The regulations which govern motions to reconsider, such as the Service motion here, require that the moving party state the reasons for the motion and support such reasoning by any pertinent precedent decisions. 8 C.F.R. § 3.8 (1990). Accordingly, the Service has submitted the following reasoning and precedent in support of its motion.

First, the Service briefs in support of reconsideration stress repeatedly that this Board was under a misunderstanding when we concluded in our prior decision that "no further evidence is likely to be presented on the deportability issue." The Service urges that the case was unnecessarily terminated based upon this misunderstanding. However, there was no misunderstanding. As our prior decision indicates, the Board was aware that certain additional evidence, of unknown probity, existed. The respondent made known that he would move to suppress any such evidence if the Service attempted to introduce it. Had the Service nonetheless wished to introduce additional evidence, it could have attempted to do so in the first instance, or, it could have requested a continuance for that purpose as a basis for opposing interlocutory consideration of the case. Faced with these options for presenting additional evidence, the Service chose neither, but elected rather to argue its case on the sole basis of the respondent's silence. We are satisfied that the Service had every reasonable opportunity to present all the evidence it wished but did not avail itself of this opportunity, for reasons of its own. If the Service had other intentions, it could have acted upon them in the manner described above.

Arguably, it is unfair to a party who possesses additional evidence, to abruptly take away, through an interlocutory ruling, the opportunity to present that evidence at the expected continuation of the hearing. This is the essence of the Service argument here. However, as we have related above, this is not what occurred. Rather, the hearing below was complete as far as the issues in dispute were concerned. The immigration judge found that the evidentiary issue was resolved. The Service did not suggest in its brief on interlocutory appeal that it wished to introduce additional evidence, or that as a procedural matter, the respondent's request for termination of the proceedings should be denied for that reason. Instead, the Service rested on the merits of its case. The issue thus presented was dispositive, was important for the proper administration of the immigration laws, and

246

was admittedly an issue recurring in other cases. We therefore decided the issue and properly terminated the proceedings.

Second, the Service argues that in electing to decide the case upon interlocutory appeal, the Board lacked the important contextual foundation of a transcript of the oral arguments, the representations of the parties, and the rulings of the court. The Service does not, however, explain what relevant representations were made below, nor what rulings were delivered, which might have shed additional light on the issues we decided in our prior consideration of the case. We observe that on the contrary, the interlocutory appeal was well-briefed by both parties, and the facts regarding the issue to be decided were not in dispute. The Service has not here called any of these facts into question. In fact, the concerns the Service raises by its argument are precisely those which we take into account when initially deciding whether to accept an interlocutory appeal. We therefore find this argument for reconsideration unpersuasive.

Third, the Service argues that termination of the case, and possibly of all cases similarly situated, is an administrative hindrance and thus will run against the very goals this Board pursues in accepting interlocutory appeals—namely assuring the proper administration of the immigration laws. This argument would appear to assume that the proper administration of the immigration laws in this context consists essentially in administrative efficiency in removing unauthorized persons from the United States. This is indeed an important aim, which it is the duty of the Service to pursue. However, we observe that the proper administration of the immigration laws embraces other goals as well, such as insuring that proceedings are fair, that the legal rights of all parties are observed, that relevant burdens of proof are met, and that persons who are to be removed from the United States are clearly deportable aliens. Certain deficiencies in this respect led us to terminate the proceedings in this case.

The Service argument also implies that if our prior decision is affirmed, proceedings in this and all similar cases will, in fact, be reinstituted anyway, and that this will require unnecessary duplication of effort by the Service. At present, this assumption is entirely speculative.[1] We do not find that such speculation warrants reconsideration of the disposition of the case.

Fourth, the Service argues that to reopen this case would advance

---

[1] The Service alleged that the respondent is a Salvadoran who is not legally in the United States. We note that section 303 of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, provides certain qualified Salvadoran nationals with temporary protected legal status in the United States for 18 months, subject to discretionary extensions by the Attorney General under section 302(b)(3)(C) of that Act.

the policy behind certain regulations, and that the Board must reopen the case in order to avoid manifest unfairness to the Service. In support of these contentions, the Service cites regulations which state that it may, at the appropriate time during the proceedings, introduce additional charges of deportability, and/or additional factual allegations. 8 C.F.R. §§ 3.28 and 242.16(d) (1990). The Service further submits a precedent decision in which this was actually done after a decision had been rendered. See Matter of Loo, 13 I&N Dec. 182 (BIA 1969). However, in the instant case, the Service does not seek to advance additional charges of deportability, nor does it seek to advance additional factual allegations. The Service does not wish to modify its case against the respondent at all, but rather requests the opportunity to make a second effort at proving the same allegations and charge which have already been advanced unsuccessfully. Therefore, even if we were willing to regard the Service request as having been made at an appropriate time, these regulations, and the precedent represented by Matter of Loo, would not support the Service argument.

Finally, the Service contends that the case of Zamora-Morel v. INS, 905 F.2d 833 (5th Cir. 1990), supports its argument that failure to reopen the instant case would be unfair. In that case, the petitioner had been found deportable on multiple charges and applied for relief from deportation. However, one of the charges was dropped when the Service attorney, in consultation with the immigration judge, physically scratched out one of the charges of deportability on the amended Order to Show Cause. As a result, it appeared that the petitioner may have become eligible for an additional form of relief. However, this fact went unnoticed. Both parties rested, and the immigration judge announced that he would retire briefly to prepare a decision. Only then did the petitioner's attorney realize that the petitioner was apparently eligible for relief. He asked the immigration judge to consider this new issue. The immigration judge ruled that the request was untimely. However, the Circuit Court of Appeals reversed. The court held that to consider the petitioner's request untimely was to destroy his only reasonable opportunity for presenting his case for relief at the hearing. In so holding, the court stated, "[T]he alien should bring the request before the IJ as soon as there is realization of the possibility of such relief." Id. at 839. The court found that the petitioner had done so and was entitled to a hearing on the issue raised.

The Service argues that, like Zamora-Morel v. INS, supra, the instant case involves a party, namely the Service, which seeks to continue the case because it has been confronted suddenly with an important and unforeseen change in circumstances, namely, our decision upon interlocutory appeal. Thus, the Service argues, its only opportunity to properly present its case has been unfairly destroyed.

We are not persuaded by this analogy. In contrast to *Zamora-Morel*, the Service in the instant case had ample time to consider the implications of an interlocutory ruling, as we have recounted above. The Service was in possession of the respondent's brief, requesting termination of the proceedings. The Service filed a lengthy brief in response but did not argue that it wished to introduce additional evidence of deportability. Instead, the Service elected to proceed without such evidence. Thus, the Service did not act "as soon as there [was] realization of the possibility," as in *Zamora-Morel v. INS*, but rather made a conscious choice not to introduce additional evidence. We therefore do not find that *Zamora-Morel v. INS* lends persuasive support to the Service's motion to reconsider.[2]

In contrast to both *Zamora-Morel v. INS, supra*, and *Matter of Loo, supra*, the moving party here seeks an opportunity to introduce evidence regarding only the charge and allegations which have already been adjudicated. In this respect, the Service request is actually a motion to reopen the case. Like reconsideration, reopening is a discretionary remedy. However, a party who seeks reopening must state the new facts to be considered at the reopened hearing and must support the motion with affidavits or other evidentiary material. Reopening will not be granted unless it appears that the evidence sought to be offered was not available and could not have been presented at the prior hearing. 8 C.F.R. §§ 3.2, 3.8 (1990); *see also INS v. Abudu*, 485 U.S. 94 (1988); *INS v. Rios-Pineda*, 471 U.S. 444 (1985); *INS v. Wang*, 450 U.S. 139 (1981); *M.A. v. INS*, 899 F.2d 304 (4th Cir. 1990); *Matter of Martinez-Romero*, 18 I&N Dec. 75 (BIA 1981), *aff'd*, 692 F.2d 595 (9th Cir. 1982). Here, the Service has not fulfilled these requirements. The evidence it seeks to introduce was available but was deliberately withheld in the prior proceedings, and the motion, admittedly intended as a motion to reconsider, is not supported by affidavits or other evidentiary material. Therefore, we find that neither the procedure required in *Zamora-Morel v. INS, supra*, nor that employed in *Matter of Loo, supra*, justifies reopening or reconsideration here.

In view of all of the foregoing, the Service motion to reconsider will be denied, and our prior decision in the case will be affirmed.

**ORDER:** The motion is denied.

---

[2]In addition, unlike the instant case, no decision had yet been rendered in *Zamora-Morel v. INS, supra*, when the petitioner asked the immigration judge to consider the new issue. The court reasoned that, since a motion to reopen would have been improper at that point, the request for consideration of the issue was not untimely, and, indeed, it would have been improper for the petitioner *not* to raise the issue immediately. *Id.* at 839. In the instant case, on the other hand, a decision on the relevant issue has already been rendered, after full briefing by both parties.