BYBEE, Circuit Judge,
dissenting:
The majority holds that the Department of Homeland Security (“DHS”) cannot satisfy its burden of establishing grounds for termination of a grant of asylum by a preponderance of the evidence where the sole witness refuses to answer questions and documentary evidence is offered only for impeachment. Maj. at 1078. Remarkably, for support, the majority principally relies on the, Board of Immigration Appeals (“BIA”) decision in Matter of Guevara, 20 I. & N. Dec. 238 (BIA 1990). But in that case, the BIA said just the opposite: “[A]n adverse inference may indeed be drawn from a respondent’s silence in deportation proceedings.” Id. at 241 (citing U.S. Supreme Court, and Ninth Circuit authority). As I explain, infra, the BIA qualified that rule in Guevara, holding that silence can be evidence; it just can’t be the only evidence. Id. at 243^44. That qualification doesn’t help Petitioner Urooj.
*1080 Because the Immigration Judge (“IJ”) not only based his decision on an adverse inference drawn from Urooj’s refusal to testify but also on Urooj’s sworn statement admitting to concocting a false story to support her asylum application, I would deny the petition. But even if I thought that the BIA had acted inconsistently with Guevara, I would remand the matter pursuant to Immigration and Naturalization Seru. v. Ventura, 537 U.S. 12, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002). Guevara is not a constitutional or a statutory mandate; it is the BIA’s own evidentiary rule. And for that reason, if I thought the BIA had misapplied its own rule, I would give it the opportunity to address our concerns in the first instance. Accordingly, I respectfully dissent.
In Guevara, the respondent was charged with entering the United States without inspection in 1987 in violation of 241(a)(2) of the Immigration and Nationality Act, then codified at 8 U.S.C. § 1251(a)(2) (1988). 20 I. & N. Dec. at 239. He never admitted to the crime and contested the allegations from the beginning, and, in an initial appearance before the I J, apparently informed the IJ through counsel that he would move to suppress any evidence produced as a result of his apprehension. Id. He appeared a second time before the IJ and was called as a witness by the government. Id. He refused to testify, asserting his Fifth Amendment privilege against self-incrimination, even after the IJ informed him of the existence of an “Agency Order” from the Immigration and Naturalization Service (“INS”) that directed him to testify and purported to immunize him from the use of any of his testimony in any future criminal proceedings. Id. at 239-40. “The Service presented no evidence to establish the respondent’s alienage and deportability other than the respondent’s silence in the face of questioning.” Id. at 240. On the basis of that silence alone, the IJ drew an adverse inference, shifted the burden of proof to Guevara, and noted that he had not established the time, place, or manner of his entry, and was, therefore, deportable as charged. Id.
The BIA reversed. It began by noting that “an adverse inference may indeed be drawn from a respondent’s silence in deportation proceedings.” Id. at 241. “Thus, it is clear that when confronted with evidence of, for example, the respondent’s alienage, the circumstances of his entry, or his deportability, a respondent who remains silent may leave himself open to adverse inferences, which may properly lead in turn to a finding of deportability against him.” Id. at 242. It distinguished Guevera’s case, though, by explaining that “[ujnder the circumstances presented here, the respondent’s silence alone does not provide sufficient evidence, in the absence of any other evidence of record at all, to establish a prima facie case of alienage, sufficient to shift the burden of proof to the respondent under [8 U.S.C. § 1361].” Id. “[W]hile we have held that a respondent’s silence may fairly corroborate other evidence presented for the record, we have also stated that ‘[suspicion cannot be solidified into proof by the mere silence of respondent.’ ” Id. at 243 (internal citations omitted; second alteration in original). And in that case, the INS had “introduced no other evidence” but respondent’s silence. Id. at 244.
This is not the case here. In the instant case, the IJ did not rely “mere[ly on Urooj’s] silence,” id. at 243, but on the DHS exhibits, particularly the record of her August 25, 2005 Sworn Statement where she admitted paying an acquaintance $5,000 to help her and Petitioner Turk become U.S. permanent residents and admitted to memorizing a false story to tell at her asylum interview. The IJ, *1081 quoting 8 C.F.R. § 1208.24(a)(1), found that Urooj’s “refusal to testify, taken in conjunction with the documentation submitted by the DHS ... [wa]s sufficient to demonstrate by a preponderance of the evidence that ‘[tjhere is a showing of fraud in the alien’s application such that he or she was not eligible for asylum at the time it was granted.’ ” Urooj was granted asylum based on her application and interview, the IJ observed, which Urooj had “previously indicated under oath were both false.” Guevara was concerned with “the absence of any other evidence of record at all,” Guevara, 20 I. & N. Dec. at 242, aside from the alien’s silence. The facts are far different here, and the IJ was likely justified in drawing an inference from the Petitioner’s silence.[1]
The majority believes that because this evidence was entered as impeachment evidence instead of on the merits, it should be ignored. Maj. at 1078-79. In retrospect, perhaps the IJ should have granted a continuance sua sponte to remedy the DHS’s failure to provide notice of the proposed witnesses and exhibits to Petitioners, as required by the Local Operating Procedures of the San Francisco, California Immigration Court. The IJ here tried to manage a confused and awkward proceeding. Although DHS could have prevented the confusion by submitting Urooj’s name as a witness in conformity with the local rules, it is not entirely clear that, in a proceeding to terminate Urooj’s asylum status for her fraudulent statements, the DHS had to indicate it would call Urooj herself if she declined to testify in her own defense.
In any event, we have no warrant for overturning the BIA’s decision based on its application of its own rules. I do not think the BIA erred, but if we are convinced the BIA has behaved inconsistently, the proper procedure is to remand the case to the BIA for an explanation and further proceedings.
I respectfully dissent.

. The majority also cites Navia-Duran v. Immigration and Naturalization Serv., 568 F.2d 803 (1st Cir. 1977) for support. There, the court vacated a deportation order where the only evidence presented by the government in a deportation proceeding was the alien’s statement admitting to illegal presence, because the statement was involuntary and taken in violation of the alien's due process rights, and was, thus, inadmissible. Id. at 811. Here, by contrast, Urooj’s August 25, 2005 statement was not procured involuntarily; according to the record, Urooj "does not dispute the veracity of her signed, sworn statement, nor did she offer any explanation for the document.”